# EXHIBIT A

# Flexible Premium Deferred Annuity

The Flexible Premiums paid for the policy will be accumulated to provide an income payable at the Annuity Date. A Death Benefit is payable before the Annuity Date. Nonparticipating, no annual dividends.

Signed for the Company at its Home Office on the date of issue.

Vice President and Secretary                 President

**YOUR 20 DAY RIGHT TO EXAMINE YOUR POLICY**
You may return your policy within 20 days after receiving it if you are dissatisfied for any reason. You may return your policy to your agent or our Home Office. We will void the policy and mail a refund of the premium you paid within 10 days of receipt.

This is a legal contract between you and the Company.

**READ YOUR POLICY CAREFULLY**

ADMINISTRATION AND SERVICE PROVIDED BY
Life**USA**®   Box 59060
Minneapolis, MN 55459-0060
1-800-950-1962
NB2042S R-4/97

**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA**
**300 South Highway 169**
**Minneapolis, MN 55426-1191**

"A Stock Company"

P6500N

## DEFINITIONS

This section provides information that is specific to the benefits that you have chosen. Most of these terms are capitalized throughout the policy to help you easily recognize them.

**We, our, us** or **the Company** means Allianz Life Insurance Company of North America.

**You** and **your** means the owner of this policy named in the application, unless later changed. The owner may be other than the Annuitant.

**Age** means the Annuitant's age on the last birthday.

**Annuitant** means the person upon whose life the annuity payments are based as shown on the Policy Schedule.

**Annuitization Value** is the amount used to calculate the annuity payments if the Annuity Option payout requirements are met. The requirements are described in the Annuitization Value provision.

The **Annuity Date** is the date on which annuity payments begin.

The **Beneficiary** is the person or entity to whom we will pay the Death Benefit if the Annuitant dies. The Beneficiary is named in the application unless you subsequently change the Beneficiary designation.

**Cash Value** is the amount paid upon a lump sum surrender, upon electing to receive annuity payments over a period of less than ten years, or upon electing to receive annuity payments before the fifth policy anniversary. It is described in the Cash Value section.

**Contingent Annuitant** is the person, you choose, upon whose life Annuity Option F and G are based.

**Deferral** is the period during which the policy is in force. This period is prior to the date annuity payments begin.

**Flexible Premium** means the consideration paid for the policy whether paid in one sum or in varying amounts during the first policy year.

**Payout** is the period during which an Annuity Option has been elected and annuity payments are being received. This period follows the Annuity Date.

The **Policy Date** is shown in the Policy Schedule and determines the monthly anniversary date, policy anniversaries, and policy years.

A **Proportional Reduction Factor** is equal to the Cash Value after a partial surrender divided by the Cash Value before a partial surrender. A Proportional Reduction Factor is calculated for each partial surrender.

**Surrender** is any of the following:

1. A full or partial lump sum withdrawal;

2. Electing to receive annuity payments under any Annuity Option before the fifth policy anniversary; or

3. Electing to receive annuity payments under Annuity Option A, D, or E for less than 10 policy years.

## GUIDE TO POLICY PROVISION

Alternate Annuity Option I ............................................. 7

Alternate Annuity Option II............................................ 8

Annuitization Value ...................................................... 5

Annuity Date ................................................................ 9

Annuity Options........................................................... 9

Beneficiary.................................................................. 4

Cash Value ................................................................. 5

Death Benefit .............................................................. 6

Definitions................................................................... 2

Full Surrender ............................................................. 6

General Provisions ...................................................... 9

Guaranteed Values (Basis of Values) ......................... 6

Misstatement of Age or Sex........................................ 9

Ownership ................................................................... 4

Partial Surrender ......................................................... 6

Policy Schedule........................................................... 3

Premium...................................................................... 6

Purchase Rate Tables ............................................... 10

Table of Guaranteed Cash Values ............................ 11

Termination ................................................................. 5

POLICY SCHEDULE

NOTE: THE ANNUITY DATE IS NORMALLY THE LATER OF THE POLICY ANNIVERSARY FOLLOWING THE
      ANNUITANT'S 70TH BIRTHDAY OR TEN YEARS FOLLOWING THE POLICY DATE.
      HOWEVER, YOU MAY CHOOSE A DATE WHICH IS EARLIER OR LATER.


**GUARANTEED INTEREST RATE:**
    DURING DEFERRAL:
        ANNUITIZATION VALUE:      5.00% FOR THE FIRST POLICY YEAR,
                                    3.00% THEREAFTER
        CASH VALUE:                 3.00% FOR ALL POLICY YEARS
    DURING PAYOUT:                  2.50%


**ANNUITIZATION BONUS PERCENTAGE:**           10.00%


| | | | | |
|---|---|---|---|---|
| **ANNUITANT:** | JOY P WHITMAN RUSH | **AGE AND SEX:** | 49 | FEMALE |
| **POLICY NUMBER:** | 6949092 | **POLICY DATE:** | | 02/13/2001 |
| **INITIAL PREMIUM:** | $10,000.00 | **MONTHLY ANNIVERSARY DATE:** | | 13 |
| | | **ANNUITY DATE:** | | 02/13/2022 |

**OWNER AND BENEFICIARY:**    AS NAMED IN APPLICATION OR AS LATER CHANGED.

# ANNUITY POLICY LOAN ENDORSEMENT

This endorsement is attached to the policy as of the Policy Date and amends the policy as follows:

**Definition of terms -** Unless redefined below, the terms defined in the policy will have the same meaning when used in this Endorsement. For purposes of this Endorsement, the following definition applies.

**Account Value -** The policy value from which loans or surrenders are withdrawn as described in the policy. The value is defined as the Cash Value or the Surrender Value (minus any previous policy loans).

You may borrow up to one half of the Account Value of this policy. No loan will be allowed for an amount less than $1,000 or for an amount that would reduce the remaining Account Value below $500. In no event can the aggregate amount borrowed exceed $50,000. Loan proceeds will be paid to you from the Account Value on a last in/first out basis.

You must request a loan in writing in a manner acceptable to us and assign the policy to us as collateral for the loan. We may defer granting a loan for up to six months after we receive your request. We may limit the frequency at which loans are made.

You may repay a loan at any time. An outstanding loan balance plus any unpaid interest due will be deducted from the Death Benefit. Upon annuitization, an outstanding loan balance plus unpaid interest due will be treated in the same manner as a partial surrender.

This policy will terminate if an outstanding loan balance plus unpaid interest due equals or exceeds the Account Value. Termination will be effective 31 days after we mail notice to you at your last known address.

The loan interest rate is 7.4% in advance. Unpaid interest will be added to your loan. The Account Value and the Annuitization Value, if any, may earn interest on the loaned amount at a rate lower than the current declared rate in effect. That rate will never be lower than the minimum rate guaranteed in the policy.

In all other respects the provisions, conditions, exceptions and limitations contained in the policy remain unchanged.

## ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA

*Suzanne Afepin*

Vice President and Secretary

PE-LN/N

**AMENDMENT ENDORSEMENT**

This endorsement is attached to the policy as of the Policy Date and amends the policy as follows.

**ALTERNATE ANNUITIZATION OPTION** (added):
After annuity payments have begun, the benefits may be increased if the Annuitant, named in application that is attached to this policy, becomes disabled. This benefit does not apply to any contingent/joint Annuitant. The increased annuity payments will continue as long as the disability lasts. The increased annuity payment will be a constant percentage of the basic annuity payment. The increased annuity payment depends on the level of disability. Annuity payments will be increased 30% for Level 1 and 60% for Level 2.

The levels are defined by the amount of help the Annuitant needs to perform various activities. If he/she always needs help to perform basic self-care activities, the level will be determined by the following minimum requirements:

**Level 1** – Needing help with at least 2 of the 9 activities in Table A, so long as those activities are from at least 2 different clusters.

**Level 2** – Needing help with at least 5 of the 9 activities in Table A, so long as those activities are from all 3 different clusters.

**Table A:**
Activity and Cluster Table

| Cluster 1 | = | Toenails | Bathing | Dressing |
|-----------|---|----------|---------|----------|
| Cluster 2 | = | Stairs | Outside | Ambulation |
| Cluster 3 | = | Medicating | Transference | Eating |

**Definitions** – Definitions for this endorsement follow.

**Help** means always requiring the assistance of at least one other person and/or some assistive device not commonly used. Common devices include, but are not limited to, canes, handrails, handheld shower heads, shoes without laces, manually operated toenail clippers, or eyeglasses.

**Ambulation** means the ability to walk without help on a level floor inside a residence.

**Bathing** means the ability to take a bath or shower without help.

**Dressing** means the ability to dress or undress without help.

**Eating** means the ability to maintain an adequate food and fluid intake without help.

**Medicating** means the ability to take prescribed medicine without help.

**Outside** means the ability to go outside in good weather and walk one-quarter mile without help.

**Stairs** means the ability to climb a minimum of six stairs without help.

**Toenails** means the ability to cut, clip or trim toenails without help.

**Transference** means the ability to move from bed to chair or chair to bed without help.

**Conditions of Eligibility** – Annuity payments must have begun before the Annuitant's 85th birthday in order to be eligible for the increased annuity payments. Increased annuity payments are only available for any of the following Annuity Options, if available in the attached policy: Installments for Life, Installments for Life with a Guaranteed Period, Installments of a Selected Amount, Joint and Survivor Annuity, or Joint and 2/3 Survivor Annuity.

**Approving the Disability Request** – A request for increased annuity payments because of disability cannot be made until two years after annuity payments have begun. If the request is approved, the increased annuity payment will begin with the first annuity payment made 90 days after the request is filed.

To consider the first request and each later request, we must receive a completed request form that details the level of disability. It must be completed by a health care professional who is not a member of the Annuitant's family. A health care professional includes a medical doctor, a registered nurse or a licensed practical nurse. We may verify the request by use of an assessment prepared by an independent agency, which will be paid by us. We have the right to require continuing proof of disability.

**Rehabilitation** – If rehabilitation to a lower level of disability occurs, we will reduce or stop the increased annuity payment accordingly. If a new period of disability occurs, a new request must be filed. If approved, the increased annuity payments will be made according to the new level of disability.

**Death of Annuitant** – If the Annuitant dies, the increased annuity payments will stop. However, the remainder of any certain or joint and survivor annuity payments will continue as defined in the policy to which this endorsement is attached.

In all other respects the provisions, conditions, exceptions and limitations contained in the policy remain unchanged and apply to this endorsement.

**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA**

Vice President and Secretary                    President

PE1072 N

**ALTERNATE ANNUITY OPTION III (Period Certain Payout not exceeding life expectancy)**

You may request at any time or on the Annuity Date an irrevocable settlement in equal monthly installments for a period certain for the life expectancy of the Annuitant. The Annuitant's life expectancy will be as indicated in published life expectancy tables provided by the Office of the Actuary of the Social Security Administration. Each installment will consist of part benefit and part interest. Installments will be based on purchase rates we declare, but the purchase rates will never be less than those based upon 2.5% interest and the life expectancy tables as issued by the Office of the Actuary of the Social Security Administration. The Life Expectant Fund Value will be used to calculate the annuity payments.

The Life Expectant Fund Value is computed as a percentage of the Annuitization Value where the percentage varies by contract duration as follows:

| Policy Year | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11+ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Percentage of Annuitization Value | 90% | 91% | 92% | 93% | 94% | 95% | 96% | 97% | 98% | 99% | 100% |

The Life Expectant Fund Value will never be lower than the Cash Surrender Value.

We will require proof of the Annuitant's age and sex. The age used for the Annuity Option will be the Annuitant's age on the date the policy changes from a deferred status to one of payout.


In all other respects the provisions, conditions, exceptions and limitations contained in the policy remain unchanged and apply to this endorsement.

## ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA

_Suzanne Ofepin_

Vice President and Secretary

_Margery M. Hughes_

President

PE1076N

# Notice Concerning Coverage
# Limitations and Exclusions under the Ohio Life
# and Health Insurance Guaranty Association Act

Residents of Ohio who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Ohio Life and Health Insurance Guaranty Association.  The purpose of this association is to assure that policy holders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations.  If this should happen, the guaranty association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force.  The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however.  And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

**The Ohio Life and Health Insurance Guaranty Association may not provide coverage for this policy.  If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Ohio.  You should not rely on coverage by the Ohio Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.**

**Coverage is *NOT* provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.  You should check with your insurance company representative to determine if you are only covered in part or not covered at all.**

**Insurance companies or their agents are required by law to give or send you this notice.  *However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.***

**Ohio Life and Health Insurance Guaranty Association**
**1840 Mackenzie Drive**
**Columbus, Ohio  43220**

**Ohio Department of Insurance**
**2100 Stella Court**
**Columbus, Ohio  43266-0566**

The state law that provides for this safety-net coverage is called the Ohio Life and Health Insurance Guaranty Association Act.  On the back of this page is a brief summary of this law's coverages, exclusions and limits.  This summary does not cover all provisions of the law nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

NB2061N                                    (Please turn to back of page)

## COVERAGE

Generally, individuals will be protected by the life and health insurance guaranty association if they live in Ohio and hold a life or health insurance contract, annuity contract, unallocated annuity contract, or if they are insured under a group insurance contract, issued by a member insurer. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are **not** protected by this association if:
• they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
• the insurer was not authorized to do business in this state;
• their policy was issued by a medical, health or dental care corporation, an HMO, a fraternal benefit society, a mutual protective association or similar plan in which the policy holder is subject to future assessments, or by an insurance exchange.

The association also does **not** provide coverage for:
• any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
• any policy of reinsurance (unless an assumption certificate was issued);
• interest rate yields that exceed an average rate;
• dividends;
• credits given in connection with the administration of a policy by a group contract holder;
• employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them)

## LIMITS ON AMOUNT OF COVERAGE

The act also limits the amount the association is obligated to pay out:  The association cannot pay more than what the insurance company would owe under a policy or contract.  Also, for any one insured life, the association will pay a maximum of $300,000 -- no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. Within this overall $300,000 limit, the association will not pay more than $100,000 in cash surrender values, $100,000 in health insurance benefits, $100,000 in present value of annuities, or $300,000 in life insurance death benefits -- again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages.

*Note to benefit plan trustees or other holders of unallocated annuities (GICs, DACs, etc.) covered by the act:*  For unallocated annuities that fund governmental retirement plans under Section 401(k), 403(b) or 457 of the Internal Revenue Code, the limit is $100,000 in present value of annuity benefits including net cash surrender and net cash withdrawal per participating individual.  In no event shall the association be liable to spend more than $300,000 in the aggregate per individual.  For covered unallocated annuities that fund other plans, a special limit of $1,000,000 applies to each contractholder, regardless of the number of contracts held with the same company or number of persons covered.  In all cases, of course, the contract limits also apply.

**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA**

## Indexed Payout Rider

The Company has issued this rider as a part of the policy to which it is attached.

### DEFINITIONS

The **Benefit Election Notice** will be mailed to you at the beginning of a Payout Index Term. The Notice will include the following values for that Payout Index Term: the Initial Payout Index Value, the Payout Index, the Payout Index Cap, the Payout Index Term, the Payout Participation Rate, and the Rider Charge Percentage.

The **Index Increase Amount** is never less than zero and equals (a) minus (b), where:
   (a) is the average of the Monthly Payout Index Values during the Payout Index Term; and
   (b) is the Initial Payout Index Value.

The **Initial Payout Index Value** is the value of the Payout Index at the close of the Last Business Day before the start of a Payout Index Term. This value is shown in the Benefit Election Notice.

The **Last Business Day** is the last day that the Payout Index was traded or calculated for a specified date.

The **Monthly Payout Index Value** is the value of the Payout Index at the close of the Last Business Day before each Payout Monthly Anniversary Date.

The **Payout Anniversary Date** is the day and month which correspond to the day and month that Payouts were initially elected from the policy to which this rider is attached.

The **Payout Increase** is the amount by which all future Payouts will increase due to the performance of the Payout Index during a Payout Index Term. This increase will occur for all Payouts after the end of a Payout Index Term. The Payout Increase is (a) times (b), where:
   (a) is the first Payout of the Payout Index Term (net of Rider Charge); and
   (b) is the Payout Increase Rate.

The **Payout Increase Rate** is never greater than the Payout Index Cap and equals (a) times (b) divided by (c), where:
   (a) is the Payout Participation Rate;
   (b) is the Index Increase Amount; and
   (c) is the Initial Payout Index Value.
The **Payout Index** is shown in the Benefit Election Notice. If the publication of the Payout Index is discontinued or the calculation of the Payout Index is

changed substantially, we will substitute a suitable Payout Index and provide you Notice.

The **Payout Index Cap** is the maximum increase in the Payout Increase Rate for a Payout Index Term. This cap is shown in the Benefit Election Notice and is guaranteed for that Payout Index Term. The cap ranges from 2.5% to 100%.

The **Payout Index Term** is shown in the Benefit Election Notice. The amount of the Payout Increase is based on the performance of the Payout Index during this period of time.

The **Payout Monthly Anniversary Date** is the day of the month which correspond to the day of the month that Payouts were initially elected from the attached policy.

The **Payout Participation Rate** is shown in the Benefit Election Notice and is guaranteed for that Payout Index Term. This rate is used in the Payout Increase Rate calculation.

**Payouts** are the installments you are receiving under a Settlement Provision or an Annuity Option. Election of Benefits under this rider will result in Payouts being adjusted by all Rider Charges and any Payout Increases.

The **Rider Charge** is the amount by which we reduce all future Payouts at the beginning of each Payout Index Term. This charge is the Rider Charge Percentage for this Payout Index Term multiplied by the Payouts at the beginning of each Payout Index Term. This charge permanently reduces all future Payouts.

The **Rider Charge Percentage** is the percentage shown in the Benefit Election Notice and is guaranteed for that Payout Index Term. This percentage ranges from 0% to 10%.

PR1012N

## INDEX PAYOUT OPTION

**Election of Benefit** – You may elect the Index Payout Benefit on a Payout Anniversary Date if the following conditions are met.

    (a) The Payouts were elected after the fifth policy year;

    (b) The Payouts have been elected under Installments for a guaranteed period of at least 10 years, or installments for life (including life with a period certain or joint and survivor);

    (c) The first Payout is due to you no sooner than one month after the Payouts were initially elected from the attached policy; and

    (d) You have sent a satisfactory written notice to us requesting the Index Payout Option.

**Notification of Benefit** – We will send you a Benefit Election Notice at the beginning of a Payout Index Term.  There is a Payout Free Look Provision, so please review the notice immediately to ensure that the values set at the beginning of the Payout Index Term meet your expectations.

We will send you a statement summarizing the Payouts at the end of each Payout Index Term.  The statement will identify any Payout Increase and the values used  to calculate it.

**Index Payout Benefit** – Any Payout Increase is added to all future Payouts after the end of that Payout Index Term and continues until this rider terminates.  If the value of the Payout Increase is not greater than zero or if the rider terminates, no Index Payout Benefit will be credited after the end of that Payout Index Term.

You may discontinue this benefit at the end of any Payout Index Term.  If you do not tell us to discontinue this benefit, a new Payout Index Term will begin, a new Rider Charge will apply, and we will send you a new Benefit Election Notice.

## CONSIDERATION

A Rider Charge is applied to all future Payouts.  The Rider Charge begins with the first Payout in a Payout Index Term and applies to all Payouts both during and after the Payout Index Term.

## PAYOUT FREE LOOK PROVISION

You may notify us in writing within 20 days after receiving the Benefit Election Notice that you do not want to elect the Indexed Payout Benefit at this time.  If a Payout Free Look Provision is elected within the allotted time, the new Index Payout Option will be reversed.  The information disclosed in that Benefit Election Notice will no longer apply to the Payouts.  The Rider Charge for that Payout Index Term will be reversed and the Payouts will return to the value prior to the beginning of that Payout Index Term.  We will pay you any applicable refund resulting from this adjustment.

## AUTOMATIC TERMINATION

This rider will automatically terminate when Payouts are no longer being received.

## NO DIVIDENDS ARE PAYABLE

This rider does not participate in our profits or surplus.

Signed for the Company in Minneapolis, Minnesota and effective on the date the policy is issued unless a different effective date is shown here.

Vice President and Secretary         President

PR1012N

# OWNERSHIP

You are solely entitled to all benefits, rights and privileges under this policy while in deferral and during the lifetime of the Annuitant.

**Death of the Owner --** If you die prior to the date annuity payments begin, the entire interest in the policy will be distributed within five years of your death. The Cash Value will be paid if taken in a lump sum or over a period less than five years. The Annuitization Value will be paid if annuity payments are taken under an Annuity Option over 5 years.

If you die on or after the date annuity payments begin the following will apply.

1. The remaining portion of the policy will be distributed at least as rapidly as under the method of distribution being made as of the date of your death; or
2. If any portion of your interest is payable to, or for the benefit of, a designated individual, such portion will be distributed over the life expectancy of such designated individual (or over a period not extending beyond the life expectancy of such designated individual) and payments must begin within one year of the date of your death.

If your interest is payable to or for the benefit of your spouse, he/she will be treated as the owner of the policy for distribution purposes.

If you die before the Annuitant, your rights will pass to the executor of your estate unless ownership has been otherwise assigned.

**Change of Ownership --** You may transfer ownership of this policy to a new owner while in deferral and during the lifetime of the Annuitant. Notice of the change must be made in writing to our Home Office. We are not liable for any actions taken before receiving notice of the change. A change of ownership does not affect the Beneficiary unless the new owner elects to make a change.

**Assignment of Policy --** You may assign or transfer all or specific rights of your policy. No assignment will be effective until you notify us in writing. We will record your assignment. We will not be responsible for its validity or effect.

# THE BENEFICIARY

**Who Receives the Death Benefit --** We will pay the Death Benefit to the Beneficiary if the Annuitant dies before the Annuity Date. Interest will be paid on the Death Benefit from the date of death to the date of settlement at a rate no less than that required by law.

**Protection of the Death Benefit --** To the extent permitted by law, the Death Benefit will not be subject to the claims of the Beneficiary's creditors.

**If the Beneficiary Dies --** If any Beneficiary dies before the Annuitant, the Beneficiary's interest in the policy will end. If any Beneficiary dies at the same time as the Annuitant, or within 30 days after the Annuitant, that Beneficiary's interest in the policy will end. If the interests of all named Beneficiaries have ended when the Annuitant dies, we will pay the Death Benefit to you as owner. If you are not living at the time, we will pay the Death Benefit to your estate.

**How to Change a Beneficiary --** You may change the named Beneficiary by sending a satisfactory written notice to us. The change will not be effective until we record it at our Home Office. Even if the Annuitant is not living when we record the change, the change will take effect retroactively as of the date signed. Any benefits we pay before we record the change will not be affected. An irrevocable Beneficiary must give written consent before we will change that Beneficiary.

4

## BENEFITS AND VALUES

**Annuitization Value --** 100% of premium payments received during the first policy year will be credited to the Annuitization Value on the date received. The Annuitization Bonus Percentage multiplied by the premium payments received during the first policy year will also be credited to the Annuitization Value on the date premium payments are received. The Annuitization Bonus Percentage is shown on the Policy Schedule. The Annuitization Value on any specified date is equal to the following.

1. The Annuitization Value on the later of the Policy Date or the last monthly anniversary date multiplied by all Proportional Reduction Factors (if any) for all partial surrenders since the last monthly anniversary date;

plus

2. Interest earned on item 1 (above) from the later of the Policy Date or the last monthly anniversary date to the specified date;

plus

3. Premium payments credited to the Annuitization Value (including the corresponding Annuitization Bonus Percentage) since the later of the Policy Date or the last monthly anniversary date to the specified date multiplied by all Proportional Reduction Factors (if any) for all partial Surrenders since the date the premium was received;

plus

4. Interest earned on item 3 (above) since the date the premium was received.

The guaranteed minimum interest rate credited to the Annuitization Value is 3%. We may declare a higher interest rate than the guaranteed rate. The rate in effect for the Annuitization Value on the Policy Date is guaranteed for the first policy year; this rate is shown on the Policy Schedule. After the first policy anniversary, we may change the declared rate at our option. The rate declared will never be lower than the guaranteed minimum interest rate. This provision will not apply if annuity payments under an Annuity Option have begun.

You will receive the Annuitization Value if the policy has been in force for at least five years and the annuity payments are paid under an Annuity Option extending over at least ten years or over the life of the Annuitant.

**Cash Value --** 90% of any premium payment received during the first policy year will be credited to the Cash Value. The Cash Value on any specified date is equal to the following.

1. The Cash Value on the later of the Policy Date or the last monthly anniversary date;

minus

2. Any partial Surrender since the later of the Policy Date or the last monthly anniversary date;

plus

3. Interest earned on item 1 (above) minus item 2 (above) from the later of the Policy Date or the last monthly anniversary date to the specified date and interest earned on item 2 (above) from the later of the Policy Date from the last monthly anniversary date to the partial Surrender date;

plus

4. Premium payments as credited to the Cash Value since the later of the Policy Date or the last monthly anniversary date to the specified date;

plus

5. Interest earned on item 4 (above) since the date the premium was received to the specified date.

The guaranteed minimum interest rate credited to the Cash Value is 3%. We may declare a higher interest rate than the guaranteed rate. The rate in effect for the Cash Value on the Policy Date is guaranteed for the first policy year; this rate is shown on the Policy Schedule. After the first policy anniversary, we may change the declared rate at our option. The rate declared will never be lower than the guaranteed minimum interest rate.

The interest rate credited to the Cash Value may be lower than the interest rate credited to the Annuitization Value for the first ten policy years. The interest rate credited to the Cash Value will be equal to the rate credited to the Annuitization Value after the tenth policy anniversary.

**Termination --** The policy will terminate at the earliest of the following.

1. Our receipt of your written request for termination or Surrender;
2. Death of the Annuitant before the Annuity Date; or
3. The Annuity Date.

## BENEFITS AND VALUES

**Full or Partial Surrender --** You may request a full Surrender of this policy for its Cash Value at any time before the Annuity Date. A partial Surrender of the Cash Value may also be requested. 100% of the amount surrendered will be deducted from the Cash Value. A sample Table of Guaranteed Cash Values is included in the policy.

The Annuitization Value after a partial Surrender will be equal to the Annuitization Value prior to the partial Surrender multiplied by the Proportional Reduction Factor for that partial Surrender. You will receive the Annuitization Value if taken as described in the Annuitization Value provision.

You may request up to 15% of the premiums paid as a partial Surrender where 90% of the amount Surrendered will be withdrawn from the Cash Value if the following conditions are met.

1. The partial Surrender is taken after the first policy year;
2. No more than one partial Surrender is taken within a policy year; and
3. The cumulative partial Surrenders do not exceed 15% of the premiums paid.

If a full or partial Surrender or an Annuity Option is requested within one year of a partial Surrender which met the above mentioned conditions, the Cash Value will be reduced by an additional 10% of the prior partial Surrender; this Cash Value reduction will occur prior to fulfillment of this request. This additional reduction will be considered a partial Surrender.

Surrender requests must be given to us in writing. We may delay paying you the requested surrender for up to six months after we receive your written request.

**Death Benefit --** If the Annuitant dies before the Annuity Date (and is not the owner), we will pay the Beneficiary:

1. the Cash Value if taken in a lump sum or if annuity payments are elected over less than five years; or
2. the Annuitization Value if an Annuity Option is elected over a period of at least five years.

You may choose an Annuity Option for the Beneficiary. The Beneficiary may choose an Annuity Option if:

1. you have not elected an Annuity Option prior to the Annuitant's death; and
2. annuity payments have not begun.

Due proof of the Annuitant's death must be received at our Home Office. All payments will be made from our Home Office.

**Basis of Values --** Minimum policy values before the Annuity Date are based on 3% interest compounded annually. Interest is paid from the date of receipt of the premium, to the date of Termination. Minimum annuity payments are based on a minimum $2\frac{1}{2}\%$ interest rate compounded annually.

Paid up annuity values, Cash Values and Death Benefits will never be less than the legal minimums in the state where this policy is delivered. Values are based on the 1983 Individual Annuity Mortality Table.

## PREMIUM

Initial premium for the policy is shown on the Policy Schedule. Additional Premium may be paid at your option during the first policy year and may vary in amount. Subject to the Premium Limitation provision and the following conditions, we will accept any premium payment you send to us while this policy is in force.

1. You may pay the first premium to our authorized representative. You may send subsequent premiums to our Home Office or you may give them to an agent or cashier we authorize. We will give you a receipt if you ask for one.

2. You may pay premium at any time during the first policy year, but only if each premium is at least $25.

**Premium Limitation --** Premium may be refunded if the premium received since the Policy Date exceeds $25,000, unless the Company has granted prior approval of a larger amount. We may refund this amount on a prospective basis. Premiums received after the first policy year will be refunded.

6

## ALTERNATE ANNUITY OPTION I

If the Annuitant is confined to a hospital or long term care facility as described below for at least thirty days in a thirty-five day period, annuity payments under an Annuity Option may be requested. An Annuity Option elected after the first policy year and made over a minimum of five years will be based on the Annuitization Value.

The confinement must begin after the first policy anniversary for the ten year annuity payment period to be reduced. Election of the Annuity Option must be made while confined or within ninety days after discharge.

**Definitions**:

**Hospital --** means a facility which:

1. is licensed and operated as a hospital according to the law of the jurisdiction in which it is located;

2. operates primarily for the care and treatment of sick or injured persons as inpatients;

3. provides continuous 24 hours a day nursing service by or under the supervision of a registered graduate professional nurse (R.N.);

4. is supervised by a staff of licensed physicians; and

5. has medical, diagnostic and major surgical facilities or has access to such facilities.

**Long Term Care Facility --** means a Skilled Nursing Facility or an Intermediate Care Facility or a Residential Care Facility. Long Term Care Facility does not mean:

1. a hospital;

2. a place that primarily treats drug addicts or alcoholics;

3. a home for the aged or mentally ill, a community living center, or a place that primarily provides domiciliary, residency or retirement care; or

4. a place owned or operated by a member of the insured's immediate family.

**Skilled Nursing Facility --** means a facility which:

1. is licensed and operated as a Skilled Nursing Facility according to the law of the jurisdiction in which it is located;

2. provides skilled nursing care under the supervision of a licensed physician;

3. provides continuous 24 hours a day nursing service by or under the supervision of a registered graduate professional nurse (R.N.); and

4. maintains a daily medical record of each patient.

**Intermediate Care Facility --** means a facility which:

1. is licensed and operated as an Intermediate Care Facility according to the law of the jurisdiction in which it is located.

2. provides continuous 24 hours a day nursing service by or under the supervision of a registered graduate professional nurse (R.N.) or a licensed practical nurse (L.P.N.); and

3. maintains a daily medical record of each patient.

**Residential Care Facility --** means a facility which:

1. is licensed and operated as a Residential Care Facility according to the law of the jurisdiction in which it is located;

2. provides nursing care under the supervision of a registered graduate professional nurse (R.N.); and

3. can accommodate three or more persons for a charge.

7

## ALTERNATE ANNUITY OPTION II

After annuity payments have begun, the benefits may be increased if the Annuitant becomes disabled. This benefit does not apply to any contingent Annuitant. The increased annuity payments will continue as long as the disability lasts. The increased annuity payment will be a constant percentage of the basic annuity payment. The increased annuity payment depends on the level of disability. Annuity payments will be increased thirty percent for Level 1 and sixty percent for Level 2.

The levels are defined by the amount of help the Annuitant to perform various activities. If he/she always needs help to perform basic self-care activities, the level will be determined by the following minimum requirements:

**Level 1 --** Needing help with at least 2 of the 9 activities in Table A, so long as those activities are from at least 2 different clusters.

**Level 2 --** Needing help with at least 5 of the 9 activities in Table A, so long as those activities are from all 3 different clusters

**Table A:**
Activity and Cluster Table

| Cluster 1 | = | Toenails | Bathing | Dressing |
|-----------|---|----------|---------|----------|
| Cluster 2 | = | Stairs | Outside | Ambulation |
| Cluster 3 | = | Medicating | Transference | Eating |

**DEFINITIONS:**

**Help** means always requiring the assistance of at least one other person and/or some assistive device not commonly used. Common devices include, but are not limited to, canes, handrails, handheld shower heads, shoes without laces, manually operated toenail clippers, or eyeglasses.

**Ambulation** means the ability to walk without help on a level floor inside a residence.

**Bathing** means the ability to take a bath or shower without help.

**Dressing** means the ability to dress or undress without help.

**Eating** means the ability to maintain an adequate food and fluid intake without help.

**Medicating** means the ability to take prescribed medicine without help.

**Outside** means the ability to go outside in good weather and walk one-quarter mile without help.

**Stairs** means the ability to climb a minimum of six stairs without help.

**Toenails** means the ability to cut, clip or trim toenails without help.

**Transference** means the ability to move from bed to chair or chair to bed without help.

**Conditions of Eligibility** Annuity payments must have begun before the Annuitant's 80th birthday in order to be eligible for the increased annuity payments. Increased annuity payments are only available for Annuity Options B, C, F, and G.

**Approving the Disability Request --** A request for increased annuity payments because of disability cannot be made until two years after annuity payments have begun. If the request is approved, the increased annuity payment will begin with the first annuity payment made 90 days after the request is filed.

To consider the first request and each later request, we must receive a completed request form that details the level of disability. It must be completed by a health care professional who is not a member of the Annuitant's family. A health care professional includes a medical doctor, a registered nurse or a licensed practical nurse. We may verify the request by use of an assessment prepared by an independent agency, which will be paid by us. We have the right to require continuing proof of disability.

**Rehabilitation --** If rehabilitation to a lower level of disability occurs, we will reduce or stop the increased annuity payment accordingly. If a new period of disability occurs, a new request must be filed. If approved, the increased annuity payments will be made according to the new level of disability.

**Death of Annuitant --** If the Annuitant dies, the increased annuity payments will stop. However, the remainder of any certain or joint and survivor annuity payments will continue as defined in the Annuity Option section.

8

## GENERAL PROVISIONS

**The Contract Consists of the Policy and the Application --** We have issued this policy in consideration of the application and the premium payment. A copy of the application is attached and is a part of this policy. The policy and the application together are the entire contract. All statements made by or for the Annuitant are considered representations and not warranties.

**Misstatement of Age or Sex in the Application --** If there is a misstatement of the Annuitant's or the Beneficiary's age or sex in the contract, we will adjust the annuity payments to that which the premiums paid would purchase at the correct age or sex. Any underpayment as a result of such misstatement must be paid immediately in one sum. Any overpayment will be deducted from the current or succeeding payment due under the policy.

**Annual Report --** We will send you a report at least once a year showing the premium payments, interest credited, partial Surrenders, and all current values.

**No Dividends are Payable --** This is a nonparticipating policy. It does not participate in our profits or surplus.

**Notice --** Any notice given under the provisions of this policy will be sent to your last known address and to any assignee of record.

**Who Can Make Changes in the Policy --** Only our President or a Vice President together with our Secretary have the authority to make any changes in this policy. Any change must be in writing.

**Annuity Date --** The Annuity Date is shown on the Policy Schedule. The Annuity Date is the date on which annuity payments begin. However you may elect a date earlier or later than the one shown.

## ANNUITY OPTIONS

At the Annuity Date, we will make annuity payments according to the Annuity Option elected. We may require proof of the Annuitant's age and sex. The age used for Annuity Options will be the Annuitant's age at the Annuity Date. The Annuitization Value will be used to calculate the annuity payments if the policy has been in force for at least five years and the annuity payments are paid in an Annuity Option which extends over a period of at least ten years or over the life of the Annuitant. If no option is elected, Option C (Installments for Life with a Guaranteed Period of 10 years) will be automatic. Options other than those listed below may be arranged with our agreement. We will pay the annuity payments as requested either monthly, quarterly, semi-annually or annually.

**Option A: Installments for a Guaranteed Period --** We will pay equal installments for a guaranteed period from ten to thirty years. Each installment will consist of part benefit and part interest. Installments will be based on purchase rates we declare, but the purchase rates will never be less than the purchase rates in Table 1.

**Option B: Installments for Life --** We will pay equal installments as long as the Annuitant is living. Installments will be based on purchase rates we declare, but the purchase rates will never be less than the purchase rates in Table 2.

**Option C: Installments for Life with a Guaranteed Period --** We will pay equal installments as long as the Annuitant is living. If the Annuitant dies before the guaranteed period has expired, annuity payments will continue to the Beneficiary until the end of the selected guaranteed period. The guaranteed period may be either five, ten, fifteen, or twenty years. Installments will be based on purchase rates we declare, but will never be less than the purchase rates in Table 2.

**Option D: Benefit Deposited For Ten Years with Interest --** We will hold the benefit on deposit for at least ten years. It will earn interest at such rates as we declare, but no less than $2^{1}/_{2}\%$ annually. We will pay the earned interest in the frequency requested. At the end of the ten year period, we will pay you the remaining value in a lump sum or you may elect another Annuity Option. You may also elect another Annuity Option extending over at least ten years or over the life of the Annuitant at any time before the end of the ten years.

**Option E: Installments of a Selected Amount --** We will pay installments of a selected amount until we have paid the entire benefit and accumulated interest. It will earn interest at such rates as we declare, but never less than $2^{1}/_{2}\%$ annually. Refer to the introductory paragraph of this section for the requirements to receive the Annuitization Value.

**Option F: Joint and Survivor Annuity --** We will pay equal installments until the deaths of the Annuitant and contingent Annuitant. Installments will be based on purchase rates we declare, but the purchase rates will never be less than the purchase rates shown in Table 3.

**Option G: Joint and 2/3 Survivor Annuity --** We will pay equal installments while both the Annuitant and contingent Annuitant are living. Two-thirds of the original amount will continue for the life of the surviving Annuitant after the death of an Annuitant. Installments will be based on purchase rates we declare, but the purchase rates will never be less than the purchase rates shown in Table 4.

9

## PURCHASE RATE TABLES

Purchase Rate Tables are based on 2½% interest and the 1983 Individual Annuity Mortality Tables.

VALUES FOR AGES NOT SHOWN WILL BE FURNISHED UPON REQUEST

| TABLE 1, PAYMENTS CERTAIN Monthly Installments, per $1,000 of applicable annuity value. | | | TABLE 2, LIFE AND MINIMUM GUARANTEED TERM Monthly Installments, per $1,000 of annuity value, payable for the number of years specified and thereafter during the lifetime of the Annuitant. | | | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Years Certain | Amount of Monthly Installments | Ann. Age on Annuity Date | Life | | 10 Years C & L | | 20 Years C & L | |
| | | | | Male Ann. | Female Ann. | Male Ann. | Female Ann. | Male Ann. | Female Ann. |
| | 10 | $9.39 | 59 | $4.93 | $4.39 | $4.81 | $4.33 | $4.42 | $4.14 |
| | 11 | 8.64 | 60 | 5.07 | 4.50 | 4.93 | 4.43 | 4.49 | 4.21 |
| | 12 | 8.02 | 61 | 5.22 | 4.61 | 5.06 | 4.54 | 4.55 | 4.28 |
| | 13 | 7.49 | 62 | 5.37 | 4.73 | 5.19 | 4.65 | 4.62 | 4.35 |
| | 14 | 7.03 | 63 | 5.54 | 4.87 | 5.32 | 4.77 | 4.68 | 4.43 |
| | 15 | 6.64 | 64 | 5.72 | 5.00 | 5.47 | 4.89 | 4.74 | 4.50 |
| | 16 | 6.30 | 65 | 5.91 | 5.15 | 5.62 | 5.02 | 4.80 | 4.57 |
| | 17 | 6.00 | 66 | 6.11 | 5.31 | 5.77 | 5.16 | 4.86 | 4.65 |
| | 18 | 5.73 | 67 | 6.33 | 5.48 | 5.93 | 5.31 | 4.91 | 4.71 |
| | 19 | 5.49 | 68 | 6.56 | 5.67 | 6.10 | 5.46 | 4.96 | 4.78 |
| | 20 | 5.27 | 69 | 6.81 | 5.87 | 6.26 | 5.62 | 5.00 | 4.85 |
| | | | 70 | 7.08 | 6.08 | 6.44 | 5.79 | 5.04 | 4.90 |
| | | | 71 | 7.36 | 6.31 | 6.61 | 5.96 | 5.08 | 4.96 |
| | | | 72 | 7.66 | 6.56 | 6.79 | 6.15 | 5.11 | 5.01 |
| | | | 73 | 7.99 | 6.83 | 6.97 | 6.34 | 5.14 | 5.05 |
| | | | 74 | 8.34 | 7.13 | 7.15 | 6.53 | 5.17 | 5.09 |
| | | | 75 | 8.71 | 7.44 | 7.33 | 6.73 | 5.19 | 5.13 |

### TABLE 3, JOINT AND SURVIVOR ANNUITY

Monthly Installment per $1,000 of annuity value, payable as long as either the Annuitant or the contingent Annuitant is living.

| Age of Male on Annuity Date | Age of Female on Annuity Date | | | | | | |
|---|---|---|---|---|---|---|---|
| | 50 | 55 | 60 | 65 | 70 | 75 | 80 |
| 50 | $ 3.35 | $ 3.50 | $ 3.64 | $ 3.75 | $ 3.84 | $ 3.91 | $ 3.95 |
| 55 | 3.44 | 3.63 | 3.83 | 4.01 | 4.16 | 4.27 | 4.35 |
| 60 | 3.51 | 3.75 | 4.01 | 4.27 | 4.51 | 4.71 | 4.85 |
| 65 | 3.56 | 3.84 | 4.16 | 4.52 | 4.88 | 5.21 | 5.47 |
| 70 | 3.59 | 3.90 | 4.28 | 4.73 | 5.22 | 5.73 | 6.19 |
| 75 | 3.62 | 3.95 | 4.37 | 4.89 | 5.51 | 6.23 | 6.95 |
| 80 | 3.63 | 3.98 | 4.42 | 4.99 | 5.73 | 6.65 | 7.68 |

### TABLE 4, JOINT AND 2/3 SURVIVOR ANNUITY

Monthly Installment per $1,000 of annuity value, payable while the Annuitant or contingent Annuitant are both living. 2/3 of the amount of payment continues for the life of the remaining Annuitant after one Annuitant dies.

| Age of Male on Annuity Date | Age of Female on Annuity Date | | | | | | |
|---|---|---|---|---|---|---|---|
| | 50 | 55 | 60 | 65 | 70 | 75 | 80 |
| 50 | $ 3.65 | $ 3.83 | $ 4.02 | $ 4.23 | $ 4.45 | $ 4.70 | $ 4.94 |
| 55 | 3.80 | 4.01 | 4.24 | 4.50 | 4.77 | 5.07 | 5.37 |
| 60 | 3.97 | 4.21 | 4.48 | 4.80 | 5.14 | 5.52 | 5.90 |
| 65 | 4.14 | 4.42 | 4.75 | 5.13 | 5.57 | 6.05 | 6.56 |
| 70 | 4.33 | 4.64 | 5.02 | 5.49 | 6.03 | 6.67 | 7.35 |
| 75 | 4.51 | 4.86 | 5.30 | 5.84 | 6.51 | 7.32 | 8.24 |
| 80 | 4.69 | 5.07 | 5.56 | 6.19 | 6.98 | 7.99 | 9.19 |

10

## TABLE OF GUARANTEED CASH VALUES

The following Table, based on an initial premium payment of $10,000, shows the guaranteed Cash Value that would accumulate prior to the time you elect to receive annuity payments. Guaranteed Cash Values are based on an interest rate of 3%.

| End of Policy Year | Value | End of Policy Year | Value |
|---|---|---|---|
| 1 | $ 9,270 | 21 | $ 16,743 |
| 2 | 9,548 | 22 | 17,245 |
| 3 | 9,835 | 23 | 17,762 |
| 4 | 10,130 | 24 | 18,295 |
| 5 | 10,433 | 25 | 18,844 |
| 6 | 10,746 | 26 | 19,409 |
| 7 | 11,069 | 27 | 19,992 |
| 8 | 11,401 | 28 | 20,591 |
| 9 | 11,743 | 29 | 21,209 |
| 10 | 12,095 | 30 | 21,845 |
| 11 | 12,458 | 31 | 22,501 |
| 12 | 12,832 | 32 | 23,176 |
| 13 | 13,217 | 33 | 23,871 |
| 14 | 13,613 | 34 | 24,587 |
| 15 | 14,022 | 35 | 25,325 |
| 16 | 14,442 | 36 | 26,085 |
| 17 | 14,876 | 37 | 26,867 |
| 18 | 15,322 | 38 | 27,673 |
| 19 | 15,782 | 39 | 28,503 |
| 20 | 16,255 | 40 | 29,358 |

**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA**
**300 South Highway 169**
**Minneapolis, MN 55426-1191**

(800) 950-5872

The Flexible Premiums paid for the policy will be accumulated to
provide an income payable at the Annuity Date. A Death Benefit is
payable before the Annuity Date.  Nonparticipating, no annual dividends.

©1998 Life**USA**

# EXHIBIT B

# Flexible Premium Deferred Annuity

The Flexible Premiums paid for the policy will be accumulated to provide an income payable at the Annuity Date. A Death Benefit is payable before the Annuity Date. Nonparticipating, no annual dividends.

Signed for the Company at its Home Office on the date of issue.

Vice President and Secretary                    President

YOUR 20 DAY RIGHT TO EXAMINE YOUR POLICY
You may return your policy within 20 days after receiving it if you are dissatisfied for any reason. You may return your policy to your agent or our Home Office. We will void the policy and mail a refund of the premium you paid within 10 days of receipt.

This is a legal contract between you and the Company.

### READ YOUR POLICY CAREFULLY

ADMINISTRATION AND SERVICE PROVIDED BY
Life**USA**®   Box 59060
Minneapolis, MN 55459-0060
1-800-950-1962
NB2042S R-4/97

**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA**
**300 South Highway 169**
**Minneapolis, MN 55426-1191**

"A Stock Company"

P6500N

# DEFINITIONS

This section provides information that is specific to the benefits that you have chosen. Most of these terms are capitalized throughout the policy to help you easily recognize them.

**We, our, us** or **the Company** means Allianz Life Insurance Company of North America.

**You** and **your** means the owner of this policy named in the application, unless later changed. The owner may be other than the Annuitant.

**Age** means the Annuitant's age on the last birthday.

**Annuitant** means the person upon whose life the annuity payments are based as shown on the Policy Schedule.

**Annuitization Value** is the amount used to calculate the annuity payments if the Annuity Option payout requirements are met. The requirements are described in the Annuitization Value provision.

The **Annuity Date** is the date on which annuity payments begin.

The **Beneficiary** is the person or entity to whom we will pay the Death Benefit if the Annuitant dies. The Beneficiary is named in the application unless you subsequently change the Beneficiary designation.

**Cash Value** is the amount paid upon a lump sum surrender, upon electing to receive annuity payments over a period of less than ten years, or upon electing to receive annuity payments before the fifth policy anniversary. It is described in the Cash Value section.

**Contingent Annuitant** is the person, you choose, upon whose life Annuity Option F and G are based.

**Deferral** is the period during which the policy is in force. This period is prior to the date annuity payments begin.

**Flexible Premium** means the consideration paid for the policy whether paid in one sum or in varying amounts during the first policy year.

**Payout** is the period during which an Annuity Option has been elected and annuity payments are being received. This period follows the Annuity Date.

The **Policy Date** is shown in the Policy Schedule and determines the monthly anniversary date, policy anniversaries, and policy years.

A **Proportional Reduction Factor** is equal to the Cash Value after a partial surrender divided by the Cash Value before a partial surrender. A Proportional Reduction Factor is calculated for each partial surrender.

**Surrender** is any of the following.

1. A full or partial lump sum withdrawal;

2. Electing to receive annuity payments under any Annuity Option before the fifth policy anniversary; or

3. Electing to receive annuity payments under Annuity Option A, D, or E for less than 10 policy years.

# GUIDE TO POLICY PROVISION

Alternate Annuity Option I ............................................ 7

Alternate Annuity Option II........................................... 8

Annuitization Value ..................................................... 5

Annuity Date ............................................................. 9

Annuity Options.......................................................... 9

Beneficiary................................................................ 4

Cash Value ............................................................... 5

Death Benefit ............................................................ 6

Definitions................................................................. 2

Full Surrender ........................................................... 6

General Provisions ...................................................... 9

Guaranteed Values (Basis of Values) .......................... 6

Misstatement of Age or Sex......................................... 9

Ownership................................................................. 4

Partial Surrender ........................................................ 6

Policy Schedule.......................................................... 3

Premium.................................................................... 6

Purchase Rate Tables ................................................ 10

Table of Guaranteed Cash Values ............................... 11

Termination ............................................................... 5

POLICY SCHEDULE

NOTE: THE ANNUITY DATE IS NORMALLY THE LATER OF THE POLICY ANNIVERSARY FOLLOWING THE
      ANNUITANT'S 70TH BIRTHDAY OR TEN YEARS FOLLOWING THE POLICY DATE.
      HOWEVER, YOU MAY CHOOSE A DATE WHICH IS EARLIER OR LATER.


**GUARANTEED INTEREST RATE:**
    DURING DEFERRAL:
        ANNUITIZATION VALUE:           5.00% FOR THE FIRST POLICY YEAR,
                                      3.00% THEREAFTER
        CASH VALUE:                     3.00% FOR ALL POLICY YEARS
    DURING PAYOUT:                     2.50%


**ANNUITIZATION BONUS PERCENTAGE:**                   10.00%


| | | | |
|---|---|---|---|
| **ANNUITANT:** | LAURA J WHITMAN | **AGE AND SEX:** | 41    FEMALE |
| **POLICY NUMBER:** | 6949070 | **POLICY DATE:** | 02/13/2001 |
| **INITIAL PREMIUM:** | $10,000.00 | **MONTHLY ANNIVERSARY DATE:** | 13 |
| | | **ANNUITY DATE:** | 02/13/2030 |

**OWNER AND BENEFICIARY:**      AS NAMED IN APPLICATION OR AS LATER CHANGED.

# ANNUITY POLICY LOAN ENDORSEMENT

This endorsement is attached to the policy as of the Policy Date and amends the policy as follows:

> **Definition of terms** - Unless redefined below, the terms defined in the policy will have the same meaning when used in this Endorsement.  For purposes of this Endorsement, the following definition applies.
>
>> **Account Value** - The policy value from which loans or surrenders are withdrawn as described in the policy.  The value is defined as the Cash Value or the Surrender Value (minus any previous policy loans).
>
> You may borrow up to one half of the Account Value of this policy.  No loan will be allowed for an amount less than $1,000 or for an amount that would reduce the remaining Account Value below $500.  In no event can the aggregate amount borrowed exceed $50,000.  Loan proceeds will be paid to you from the Account Value on a last in/first out basis.
>
> You must request a loan in writing in a manner acceptable to us and assign the policy to us as collateral for the loan.  We may defer granting a loan for up to six months after we receive your request.  We may limit the frequency at which loans are made.
>
> You may repay a loan at any time.  An outstanding loan balance plus any unpaid interest due will be deducted from the Death Benefit.  Upon annuitization, an outstanding loan balance plus unpaid interest due will be treated in the same manner as a partial surrender.
>
> This policy will terminate if an outstanding loan balance plus unpaid interest due equals or exceeds the Account Value.  Termination will be effective 31 days after we mail notice to you at your last known address.
>
> The loan interest rate is 7.4% in advance.  Unpaid interest will be added to your loan.  The Account Value and the Annuitization Value, if any, may earn interest on the loaned amount at a rate lower than the current declared rate in effect.  That rate will never be lower than the minimum rate guaranteed in the policy.

In all other respects the provisions, conditions, exceptions and limitations contained in the policy remain unchanged.

## ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA

*Suzanne O'Pepin*

**Vice President and Secretary**

PE-LN/N

## AMENDMENT ENDORSEMENT

This endorsement is attached to the policy as of the Policy Date and amends the policy as follows.

**ALTERNATE ANNUITIZATION OPTION** (added):
After annuity payments have begun, the benefits may be increased if the Annuitant, named in application that is attached to this policy, becomes disabled. This benefit does not apply to any contingent/joint Annuitant. The increased annuity payments will continue as long as the disability lasts. The increased annuity payment will be a constant percentage of the basic annuity payment. The increased annuity payment depends on the level of disability. Annuity payments will be increased 30% for Level 1 and 60% for Level 2.

The levels are defined by the amount of help the Annuitant needs to perform various activities. If he/she always needs help to perform basic self-care activities, the level will be determined by the following minimum requirements:

**Level 1** – Needing help with at least 2 of the 9 activities in Table A, so long as those activities are from at least 2 different clusters.

**Level 2** – Needing help with at least 5 of the 9 activities in Table A, so long as those activities are from all 3 different clusters.

**Table A:**
Activity and Cluster Table

| Cluster 1 | = | Toenails | Bathing | Dressing |
|-----------|---|----------|---------|----------|
| Cluster 2 | = | Stairs | Outside | Ambulation |
| Cluster 3 | = | Medicating | Transference | Eating |

**Definitions** – Definitions for this endorsement follow.

**Help** means always requiring the assistance of at least one other person and/or some assistive device <u>not</u> commonly used. <u>Common</u> devices include, but are not limited to, canes, handrails, handheld shower heads, shoes without laces, manually operated toenail clippers, or eyeglasses.

**Ambulation** means the ability to walk without help on a level floor inside a residence.

**Bathing** means the ability to take a bath or shower without help.

**Dressing** means the ability to dress or undress without help.

**Eating** means the ability to maintain an adequate food and fluid intake without help.

**Medicating** means the ability to take prescribed medicine without help.

**Outside** means the ability to go outside in good weather and walk one-quarter mile without help.

**Stairs** means the ability to climb a minimum of six stairs without help.

**Toenails** means the ability to cut, clip or trim toenails without help.

**Transference** means the ability to move from bed to chair or chair to bed without help.

**Conditions of Eligibility** – Annuity payments must have begun before the Annuitant's 85th birthday in order to be eligible for the increased annuity payments. Increased annuity payments are only available for any of the following Annuity Options, if available in the attached policy: Installments for Life, Installments for Life with a Guaranteed Period, Installments of a Selected Amount, Joint and Survivor Annuity, or Joint and 2/3 Survivor Annuity.

**Approving the Disability Request** – A request for increased annuity payments because of disability cannot be made until two years after annuity payments have begun. If the request is approved, the increased annuity payment will begin with the first annuity payment made 90 days after the request is filed.

To consider the first request and each later request, we must receive a completed request form that details the level of disability. It must be completed by a health care professional who is not a member of the Annuitant's family. A health care professional includes a medical doctor, a registered nurse or a licensed practical nurse. We may verify the request by use of an assessment prepared by an independent agency, which will be paid by us. We have the right to require continuing proof of disability.

**Rehabilitation** – If rehabilitation to a lower level of disability occurs, we will reduce or stop the increased annuity payment accordingly. If a new period of disability occurs, a new request must be filed. If approved, the increased annuity payments will be made according to the new level of disability.

**Death of Annuitant** – If the Annuitant dies, the increased annuity payments will stop. However, the remainder of any certain or joint and survivor annuity payments will continue as defined in the policy to which this endorsement is attached.

In all other respects the provisions, conditions, exceptions and limitations contained in the policy remain unchanged and apply to this endorsement.

**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA**

*Suzanne Oferin*

Vice President and Secretary

*Margery M. Hughes*

President

**ALTERNATE ANNUITY OPTION III (Period Certain Payout not exceeding life expectancy)**

You may request at any time or on the Annuity Date an irrevocable settlement in equal monthly installments for a period certain for the life expectancy of the Annuitant.  The Annuitant's life expectancy will be as indicated in published life expectancy tables provided by the Office of the Actuary of the Social Security Administration.  Each installment will consist of part benefit and part interest. Installments will be based on purchase rates we declare, but the purchase rates will never be less than those based upon 2.5% interest and the life expectancy tables as issued by the Office of the Actuary of the Social Security Administration.  The Life Expectant Fund Value will be used to calculate the annuity payments.

The Life Expectant Fund Value is computed as a percentage of the Annuitization Value where the percentage varies by contract duration as follows:

| Policy Year | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11+ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Percentage of Annuitization Value | 90% | 91% | 92% | 93% | 94% | 95% | 96% | 97% | 98% | 99% | 100% |

The Life Expectant Fund Value will never be lower than the Cash Surrender Value.

We will require proof of the Annuitant's age and sex.  The age used for the Annuity Option will be the Annuitant's age on the date the policy changes from a deferred status to one of payout.

In all other respects the provisions, conditions, exceptions and limitations contained in the policy remain unchanged and apply to this endorsement.

## ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA

Vice President and Secretary                    President

PE1076N

# Notice Concerning Coverage Limitations and Exclusions under the Ohio Life and Health Insurance Guaranty Association Act

Residents of Ohio who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Ohio Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policy holders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the guaranty association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

> **The Ohio Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Ohio. You should not rely on coverage by the Ohio Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.**
>
> **Coverage is *NOT* provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus. You should check with your insurance company representative to determine if you are only covered in part or not covered at all.**
>
> **Insurance companies or their agents are required by law to give or send you this notice. *However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.***
>
> **Ohio Life and Health Insurance Guaranty Association
> 1840 Mackenzie Drive
> Columbus, Ohio 43220**
>
> **Ohio Department of Insurance
> 2100 Stella Court
> Columbus, Ohio 43266-0566**

The state law that provides for this safety-net coverage is called the Ohio Life and Health Insurance Guaranty Association Act. On the back of this page is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

NB2061N                                    (Please turn to back of page)

## COVERAGE

Generally, individuals will be protected by the life and health insurance guaranty association if they live in Ohio and hold a life or health insurance contract, annuity contract, unallocated annuity contract, or if they are insured under a group insurance contract, issued by a member insurer. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are **not** protected by this association if:
• they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
• the insurer was not authorized to do business in this state;
• their policy was issued by a medical, health or dental care corporation, an HMO, a fraternal benefit society, a mutual protective association or similar plan in which the policy holder is subject to future assessments, or by an insurance exchange.

The association also does **not** provide coverage for:
• any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
• any policy of reinsurance (unless an assumption certificate was issued);
• interest rate yields that exceed an average rate;
• dividends;
• credits given in connection with the administration of a policy by a group contract holder;
• employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them)

## LIMITS ON AMOUNT OF COVERAGE

The act also limits the amount the association is obligated to pay out: The association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the association will pay a maximum of $300,000 -- no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. Within this overall $300,000 limit, the association will not pay more than $100,000 in cash surrender values, $100,000 in health insurance benefits, $100,000 in present value of annuities, or $300,000 in life insurance death benefits -- again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages.

*Note to benefit plan trustees or other holders of unallocated annuities (GICs, DACs, etc.) covered by the act:* For unallocated annuities that fund governmental retirement plans under Section 401(k), 403(b) or 457 of the Internal Revenue Code, the limit is $100,000 in present value of annuity benefits including net cash surrender and net cash withdrawal per participating individual. In no event shall the association be liable to spend more than $300,000 in the aggregate per individual. For covered unallocated annuities that fund other plans, a special limit of $1,000,000 applies to each contractholder, regardless of the number of contracts held with the same company or number of persons covered. In all cases, of course, the contract limits also apply.

# APPLICATION FOR ANNUITY  6199010-1B

**Allianz Life Insurance Company of North America**
PO Box 59060
Minneapolis, MN 55459-0060
800/950-6979

FEB 26 2001

## 1. ANNUITANT

_Laura J Whitman_

First / Middle / Last

Sex ☐ Male ☒ Female  Date of Birth ▓▓▓ 59 Age 41

Social Security Number ▓▓▓▓▓ 5930

Phone Number  Home ( 513 ) 531-1345

Work ( 513 ) 558-4225

Mailing Address 7137 Fairoaks Dr

City, State, Zip Code Cincinnati, OH 45237

## 2. OWNER (if other than the Annuitant)

☒ Individual  ☐ Corporation  ☐ Partnership  ☐ Trust

☐ Joint (Owners are joint tenants with rights of survivorship)

Full Name Ray Whitman

Relationship Father  Date of Birth ▓▓▓ 25

Social Security, Tax or Employer ID# ▓▓▓▓-3679

Owner's Mailing Address _____

Contingent Owner, if applicable _____

If trust is named, please provide date of trust and trustee's
name  Date of trust ___/___/___

Trustee _____

## 3. BENEFICIARY FOR ANNUITANT

Primary Ray Whitman

Relationship to Annuitant: Father

Contingent Esther Whitman

Relationship to Annuitant: Mother

If trust is named, please provide date of trust and trustee's
name  Date of trust ___/___/___

Trustee _____

In the following Community Property States: AZ, CA, ID, LA, NV, NM, TX, WI
and WA  if spouse is not named as primary beneficiary, please acknowledge by
signing below: "I waive my Community Property interest and give my consent for
someone other than myself to be designated as Primary Beneficiary to this policy."

Spousal Consent _____

## 4. REPLACEMENT

Will life insurance or annuities be replaced if this annuity is issued?

☐ YES*  ☐ NO

*Complete replacement portion of the application in AR, CA, CO, DE, FL, HI,
ID, IL, IN, IA, KS, LA, MD, MA, MN, MS, MO, NE, NC, NM, OH, OK, OR, PA,
SC, SD, TN, UT, WA, WI, WV for any annuities or life insurance being replaced.
It is also required in AL, AZ, GA, KY, MI, MT, NV, NH, NJ, RI, VT, VA, WV for
any life insurance being replaced by this annuity.

## 5. ANNUITY PRODUCT (Select one of the following)

**Single Premium**

☐ POWERHOUSE℠★
☐ IDEAL℠ Index 75★
☒ Accumulator℠ Bonus Maxxx℠★#
☐ IDEAL℠ Annuity★

**Immediate:**

☐ WealthCare℠★◆

☐ Other _____

**Flexible Premium**

☐ 10% Cash Bonus★
☐ Elect monthly payout or bonus
☐ Do NOT withhold taxes
☐ FlexDex Bonus℠★
☐ Power Rate 5℠★
☐ Accumulator℠ Classic★
☐ Accumulator℠ X★
☐ Total Security Annuity℠
    (Payroll deduction or 403b)

★ Complete appropriate Statement of Understanding for this product
  and return to Home Office along with this application

# Premium payments are allowed during the first year ONLY

◆ Complete WealthCare Immediate Supplemental Annuity Application

## 6. TYPE OF ANNUITY

☐ Qualified  ☒ Nonqualified
    ☐ Rollover  ☐ Transfer  ☐ 1035 Exchange

☐ IRA  ☐ Roth IRA  ☐ Simple IRA  Tax Year _____

☐ Other _____  (SEP, 403b, KEOGH, etc )

## 7. PREMIUMS

Cash Submitted with Application  $ 10,000

Estimated Transfer/Rollover/1035 Amount  $ _____

Billed Premium Amount  $ _____

Select mode

☒ Single  ☐ Annual  ☐ Semi-Annually  ☐ Quarterly
☐ Monthly (Complete PAC authorization and provide void check)

## 8. COMPLETE ONLY IF PAYROLL DEDUCTION

Premium mode desired _____

Employer's Name _____

Group ID# _____  ☐ Add On  ☐ New

Length of employment _____ years _____ months

Currently working full time (minimum 30 hours per week)?

☐ YES  ☐ NO

Employer's Contribution (if applicable) $ _____

## 9. SPECIAL REQUESTS

## YOUR COMPANY REPRESENTATIVE

Agent Name Frederick Tucker  Phone # ( 513 ) 731-3334  % Split 100  Agent # 010-011747

Agent Name _____  Phone # ( ___ ) _____  % Split ____  Agent # _____

**HOME OFFICE CHANGES TO THE APPLICATION** – (Not applicable in Pennsylvania or West Virginia)

A1

SIGNATURES REQUIRED ON BACK OF THIS FORM

**REPLACEMENT (Complete if life insurance or annuities will be replaced.)**

By signing this application, I acknowledge that I have received and read a copy of the Replacement Notice and that information was completed by

_____ prior to taking an application

Applicant's Name (Please print)

_____
Address of the Applicant      City      State

_____
Agent's Name and Address      City    **FEB 2 6 2001**    State

The Proposed Policy is _____    $ _____

         Type of Policy - Generic Name          Face Amount

The following policies may be replaced as a result of this transaction

| Insurer as it appears on the policy | Insured as it appears on the policy | Policy Number |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

---

**AGREEMENT AND SIGNATURES**

It is agreed that (1) All statements and answers given above are true and complete to the best of my knowledge, (2) This application shall become part of any annuity contract issued by the Company, (3) If proof of the Annuitant's age is not given with the application, the Annuitant will furnish the Company such proof before annuity payments begin, (4) Any changes made in this application shall be subject to written consent of the Owner/applicant. (5) Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application containing a false or deceptive statement is guilty of insurance fraud

Signed at *CINCINNATI*   *OHIO* on this *20* day of *FEB* , *2001*
         City, State                              Month           Year

_____
Proposed Annuitant's Signature

*Roy J Whitman*
_____
Owner (if other than Annuitant)

**To be answered by Licensed Resident Agent:** I certify that the statements of the applicant have been correctly recorded in this application. To the best of my knowledge, the insurance applied for in this application ✓ will not or _____ will replace existing insurance

*Nederud D. Tucker*
_____
Agent's Signature/Witness

       RETURN TO HOME OFFICE        Allianz Life Insurance Company of North America

## ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA

## Indexed Payout Rider

The Company has issued this rider as a part of the policy to which it is attached.

### DEFINITIONS

The **Benefit Election Notice** will be mailed to you at the beginning of a Payout Index Term. The Notice will include the following values for that Payout Index Term: the Initial Payout Index Value, the Payout Index, the Payout Index Cap, the Payout Index Term, the Payout Participation Rate, and the Rider Charge Percentage.

The **Index Increase Amount** is never less than zero and equals (a) minus (b), where:
    (a) is the average of the Monthly Payout Index Values during the Payout Index Term; and
    (b) is the Initial Payout Index Value.

The **Initial Payout Index Value** is the value of the Payout Index at the close of the Last Business Day before the start of a Payout Index Term. This value is shown in the Benefit Election Notice.

The **Last Business Day** is the last day that the Payout Index was traded or calculated for a specified date.

The **Monthly Payout Index Value** is the value of the Payout Index at the close of the Last Business Day before each Payout Monthly Anniversary Date.

The **Payout Anniversary Date** is the day and month which correspond to the day and month that Payouts were initially elected from the policy to which this rider is attached.

The **Payout Increase** is the amount by which all future Payouts will increase due to the performance of the Payout Index during a Payout Index Term. This increase will occur for all Payouts after the end of a Payout Index Term. The Payout Increase is (a) times (b), where:
    (a) is the first Payout of the Payout Index Term (net of Rider Charge); and
    (b) is the Payout Increase Rate.

The **Payout Increase Rate** is never greater than the Payout Index Cap and equals (a) times (b) divided by (c), where:
    (a) is the Payout Participation Rate;
    (b) is the Index Increase Amount; and
    (c) is the Initial Payout Index Value.
The **Payout Index** is shown in the Benefit Election Notice. If the publication of the Payout Index is discontinued or the calculation of the Payout Index is changed substantially, we will substitute a suitable Payout Index and provide you Notice.

The **Payout Index Cap** is the maximum increase in the Payout Increase Rate for a Payout Index Term. This cap is shown in the Benefit Election Notice and is guaranteed for that Payout Index Term. The cap ranges from 2.5% to 100%.

The **Payout Index Term** is shown in the Benefit Election Notice. The amount of the Payout Increase is based on the performance of the Payout Index during this period of time.

The **Payout Monthly Anniversary Date** is the day of the month which correspond to the day of the month that Payouts were initially elected from the attached policy.

The **Payout Participation Rate** is shown in the Benefit Election Notice and is guaranteed for that Payout Index Term. This rate is used in the Payout Increase Rate calculation.

**Payouts** are the installments you are receiving under a Settlement Provision or an Annuity Option. Election of Benefits under this rider will result in Payouts being adjusted by all Rider Charges and any Payout Increases.

The **Rider Charge** is the amount by which we reduce all future Payouts at the beginning of each Payout Index Term. This charge is the Rider Charge Percentage for this Payout Index Term multiplied by the Payouts at the beginning of each Payout Index Term. This charge permanently reduces all future Payouts.

The **Rider Charge Percentage** is the percentage shown in the Benefit Election Notice and is guaranteed for that Payout Index Term. This percentage ranges from 0% to 10%.

PR1012N

## INDEX PAYOUT OPTION

**Election of Benefit –** You may elect the Index Payout Benefit on a Payout Anniversary Date if the following conditions are met.

(a) The Payouts were elected after the fifth policy year;

(b) The Payouts have been elected under Installments for a guaranteed period of at least 10 years, or installments for life (including life with a period certain or joint and survivor);

(c) The first Payout is due to you no sooner than one month after the Payouts were initially elected from the attached policy; and

(d) You have sent a satisfactory written notice to us requesting the Index Payout Option.

**Notification of Benefit –** We will send you a Benefit Election Notice at the beginning of a Payout Index Term. There is a Payout Free Look Provision, so please review the notice immediately to ensure that the values set at the beginning of the Payout Index Term meet your expectations.

We will send you a statement summarizing the Payouts at the end of each Payout Index Term. The statement will identify any Payout Increase and the values used to calculate it.

**Index Payout Benefit –** Any Payout Increase is added to all future Payouts after the end of that Payout Index Term and continues until this rider terminates. If the value of the Payout Increase is not greater than zero or if the rider terminates, no Index Payout Benefit will be credited after the end of that Payout Index Term.

You may discontinue this benefit at the end of any Payout Index Term. If you do not tell us to discontinue this benefit, a new Payout Index Term will begin, a new Rider Charge will apply, and we will send you a new Benefit Election Notice.

## CONSIDERATION

A Rider Charge is applied to all future Payouts. The Rider Charge begins with the first Payout in a Payout Index Term and applies to all Payouts both during and after the Payout Index Term.

## PAYOUT FREE LOOK PROVISION

You may notify us in writing within 20 days after receiving the Benefit Election Notice that you do not want to elect the Indexed Payout Benefit at this time. If a Payout Free Look Provision is elected within the allotted time, the new Index Payout Option will be reversed. The information disclosed in that Benefit Election Notice will no longer apply to the Payouts. The Rider Charge for that Payout Index Term will be reversed and the Payouts will return to the value prior to the beginning of that Payout Index Term. We will pay you any applicable refund resulting from this adjustment.

## AUTOMATIC TERMINATION

This rider will automatically terminate when Payouts are no longer being received.

## NO DIVIDENDS ARE PAYABLE

This rider does not participate in our profits or surplus.

Signed for the Company in Minneapolis, Minnesota and effective on the date the policy is issued unless a different effective date is shown here.

Vice President and Secretary                     President

## OWNERSHIP

You are solely entitled to all benefits, rights and privileges under this policy while in deferral and during the lifetime of the Annuitant.

**Death of the Owner --** If you die prior to the date annuity payments begin, the entire interest in the policy will be distributed within five years of your death. The Cash Value will be paid if taken in a lump sum or over a period less than five years. The Annuitization Value will be paid if annuity payments are taken under an Annuity Option over 5 years.

If you die on or after the date annuity payments begin the following will apply.

1. The remaining portion of the policy will be distributed at least as rapidly as under the method of distribution being made as of the date of your death; or
2. If any portion of your interest is payable to, or for the benefit of, a designated individual, such portion will be distributed over the life expectancy of such designated individual (or over a period not extending beyond the life expectancy of such designated individual) and payments must begin within one year of the date of your death.

If your interest is payable to or for the benefit of your spouse, he/she will be treated as the owner of the policy for distribution purposes.

If you die before the Annuitant, your rights will pass to the executor of your estate unless ownership has been otherwise assigned.

**Change of Ownership --** You may transfer ownership of this policy to a new owner while in deferral and during the lifetime of the Annuitant. Notice of the change must be made in writing to our Home Office. We are not liable for any actions taken before receiving notice of the change. A change of ownership does not affect the Beneficiary unless the new owner elects to make a change.

**Assignment of Policy --** You may assign or transfer all or specific rights of your policy. No assignment will be effective until you notify us in writing. We will record your assignment. We will not be responsible for its validity or effect.

## THE BENEFICIARY

**Who Receives the Death Benefit --** We will pay the Death Benefit to the Beneficiary if the Annuitant dies before the Annuity Date. Interest will be paid on the Death Benefit from the date of death to the date of settlement at a rate no less than that required by law.

**Protection of the Death Benefit --** To the extent permitted by law, the Death Benefit will not be subject to the claims of the Beneficiary's creditors.

**If the Beneficiary Dies --** If any Beneficiary dies before the Annuitant, the Beneficiary's interest in the policy will end. If any Beneficiary dies at the same time as the Annuitant, or within 30 days after the Annuitant, that Beneficiary's interest in the policy will end. If the interests of all named Beneficiaries have ended when the Annuitant dies, we will pay the Death Benefit to you as owner. If you are not living at the time, we will pay the Death Benefit to your estate.

**How to Change a Beneficiary --** You may change the named Beneficiary by sending a satisfactory written notice to us. The change will not be effective until we record it at our Home Office. Even if the Annuitant is not living when we record the change, the change will take effect retroactively as of the date signed. Any benefits we pay before we record the change will not be affected. An irrevocable Beneficiary must give written consent before we will change that Beneficiary.

4

# BENEFITS AND VALUES

**Annuitization Value --** 100% of premium payments received during the first policy year will be credited to the Annuitization Value on the date received. The Annuitization Bonus Percentage multiplied by the premium payments received during the first policy year will also be credited to the Annuitization Value on the date premium payments are received. The Annuitization Bonus Percentage is shown on the Policy Schedule. The Annuitization Value on any specified date is equal to the following.

1. The Annuitization Value on the later of the Policy Date or the last monthly anniversary date multiplied by all Proportional Reduction Factors (if any) for all partial surrenders since the last monthly anniversary date;

plus
2. Interest earned on item 1 (above) from the later of the Policy Date or the last monthly anniversary date to the specified date;

plus
3. Premium payments credited to the Annuitization Value (including the corresponding Annuitization Bonus Percentage) since the later of the Policy Date or the last monthly anniversary date to the specified date multiplied by all Proportional Reduction Factors (if any) for all partial Surrenders since the date the premium was received;

plus
4. Interest earned on item 3 (above) since the date the premium was received to the specified date.

The guaranteed minimum interest rate credited to the Annuitization Value is 3%. We may declare a higher interest rate than the guaranteed rate. The rate in effect for the Annuitization Value on the Policy Date is guaranteed for the first policy year; this rate is shown on the Policy Schedule. After the first policy anniversary, we may change the declared rate at our option. The rate declared will never be lower than the guaranteed minimum interest rate. This provision will not apply if annuity payments under an Annuity Option have begun.

You will receive the Annuitization Value if the policy has been in force for at least five years and the annuity payments are paid under an Annuity Option extending over at least ten years or over the life of the Annuitant.

**Cash Value --** 90% of any premium payment received during the first policy year will be credited to the Cash Value. The Cash Value on any specified date is equal to the following.

1. The Cash Value on the later of the Policy Date or the last monthly anniversary date;

minus
2. Any partial Surrender since the later of the Policy Date or the last monthly anniversary date;

plus
3. Interest earned on item 1 (above) minus item 2 (above) from the later of the Policy Date or the last monthly anniversary date to the specified date and interest earned on item 2 (above) from the later of the Policy Date from the last monthly anniversary date to the partial Surrender date;

plus
4. Premium payments as credited to the Cash Value since the later of the Policy Date or the last monthly anniversary date to the specified date;

plus
5. Interest earned on item 4 (above) since the date the premium was received to the specified date.

The guaranteed minimum interest rate credited to the Cash Value is 3%. We may declare a higher interest rate than the guaranteed rate. The rate in effect for the Cash Value on the Policy Date is guaranteed for the first policy year; this rate is shown on the Policy Schedule. After the first policy anniversary, we may change the declared rate at our option. The rate declared will never be lower than the guaranteed minimum interest rate.

The interest rate credited to the Cash Value may be lower than the interest rate credited to the Annuitization Value for the first ten policy years. The interest rate credited to the Cash Value will be equal to the rate credited to the Annuitization Value after the tenth policy anniversary.

**Termination --** The policy will terminate at the earliest of the following.

1. Our receipt of your written request for termination or Surrender;
2. Death of the Annuitant before the Annuity Date; or
3. The Annuity Date.

5

## BENEFITS AND VALUES

**Full or Partial Surrender --** You may request a full Surrender of this policy for its Cash Value at any time before the Annuity Date. A partial Surrender of the Cash Value may also be requested. 100% of the amount surrendered will be deducted from the Cash Value. A sample Table of Guaranteed Cash Values is included in the policy.

The Annuitization Value after a partial Surrender will be equal to the Annuitization Value prior to the partial Surrender multiplied by the Proportional Reduction Factor for that partial Surrender. You will receive the Annuitization Value if taken as described in the Annuitization Value provision.

You may request up to 15% of the premiums paid as a partial Surrender where 90% of the amount Surrendered will be withdrawn from the Cash Value if the following conditions are met.

1. The partial Surrender is taken after the first policy year;
2. No more than one partial Surrender is taken within a policy year; and
3. The cumulative partial Surrenders do not exceed 15% of the premiums paid.

If a full or partial Surrender or an Annuity Option is requested within one year of a partial Surrender which met the above mentioned conditions, the Cash Value will be reduced by an additional 10% of the partial Surrender; this Cash Value reduction will occur prior to fulfillment of this request. This additional reduction will be considered a partial Surrender.

Surrender requests must be given to us in writing. We may delay paying you the requested surrender for up to six months after we receive your written request.

**Death Benefit --** If the Annuitant dies before the Annuity Date (and is not the owner), we will pay the Beneficiary:

1. the Cash Value if taken in a lump sum or if annuity payments are elected over less than five years; or
2. the Annuitization Value if an Annuity Option is elected over a period of at least five years.

You may choose an Annuity Option for the Beneficiary. The Beneficiary may choose an Annuity Option if:

1. you have not elected an Annuity Option prior to the Annuitant's death; and
2. annuity payments have not begun.

Due proof of the Annuitant's death must be received at our Home Office. All payments will be made from our Home Office.

**Basis of Values --** Minimum policy values before the Annuity Date are based on 3% interest compounded annually. Interest is paid from the date of receipt of the premium, to the date of Termination. Minimum annuity payments are based on a minimum $2\frac{1}{2}\%$ interest rate compounded annually.

Paid up annuity values, Cash Values and Death Benefits will never be less than the legal minimums in the state where this policy is delivered. Values are based on the 1983 Individual Annuity Mortality Table.

## PREMIUM

Initial premium for the policy is shown on the Policy Schedule. Additional Premium may be paid at your option during the first policy year and may vary in amount. Subject to the Premium Limitation provision and the following conditions, we will accept any premium payment you send to us while this policy is in force.

1. You may pay the first premium to our authorized representative. You may send subsequent premiums to our Home Office or you may give them to an agent or cashier we authorize. We will give you a receipt if you ask for one.

2. You may pay premium at any time during the first policy year, but only if each premium is at least $25.

**Premium Limitation --** Premium may be refunded if the premium received since the Policy Date exceeds $25,000, unless the Company has granted prior approval of a larger amount. We may refund this amount on a prospective basis. Premiums received after the first policy year will be refunded.

6

## ALTERNATE ANNUITY OPTION I

If the Annuitant is confined to a hospital or long term care facility as described below for at least thirty days in a thirty-five day period, annuity payments under an Annuity Option may be requested. An Annuity Option elected after the first policy year and made over a minimum of five years will be based on the Annuitization Value.

The confinement must begin after the first policy anniversary for the ten year annuity payment period to be reduced. Election of the Annuity Option must be made while confined or within ninety days after discharge.

**Definitions**:

**Hospital --** means a facility which:

1.   is licensed and operated as a hospital according to the law of the jurisdiction in which it is located;

2.   operates primarily for the care and treatment of sick or injured persons as inpatients;

3.   provides continuous 24 hours a day nursing service by or under the supervision of a registered graduate professional nurse (R.N.);

4.   is supervised by a staff of licensed physicians; and

5.   has medical, diagnostic and major surgical facilities or has access to such facilities.

**Long Term Care Facility --** means a Skilled Nursing Facility or an Intermediate Care Facility or a Residential Care Facility. Long Term Care Facility does not mean:

1.   a hospital;

2.   a place that primarily treats drug addicts or alcoholics;

3.   a home for the aged or mentally ill, a community living center, or a place that primarily provides domiciliary, residency or retirement care; or

4.   a place owned or operated by a member of the insured's immediate family.

**Skilled Nursing Facility --** means a facility which:

1.   is licensed and operated as a Skilled Nursing Facility according to the law of the jurisdiction in which it is located;

2.   provides skilled nursing care under the supervision of a licensed physician;

3.   provides continuous 24 hours a day nursing service by or under the supervision of a registered graduate professional nurse (R.N.); and

4.   maintains a daily medical record of each patient.

**Intermediate Care Facility --** means a facility which:

1.   is licensed and operated as an Intermediate Care Facility according to the law of the jurisdiction in which it is located.

2.   provides continuous 24 hours a day nursing service by or under the supervision of a registered graduate professional nurse (R.N.) or a licensed practical nurse (L.P.N.); and

3.   maintains a daily medical record of each patient.

**Residential Care Facility --** means a facility which:

1.   is licensed and operated as a Residential Care Facility according to the law of the jurisdiction in which it is located;

2.   provides nursing care under the supervision of a registered graduate professional nurse (R.N.); and

3.   can accommodate three or more persons for a charge.

## ALTERNATE ANNUITY OPTION II

After annuity payments have begun, the benefits may be increased if the Annuitant becomes disabled. This benefit does not apply to any contingent Annuitant. The increased annuity payments will continue as long as the disability lasts. The increased annuity payment will be a constant percentage of the basic annuity payment. The increased annuity payment depends on the level of disability. Annuity payments will be increased thirty percent for Level 1 and sixty percent for Level 2.

The levels are defined by the amount of help the Annuitant to perform various activities. If he/she always needs help to perform basic self-care activities, the level will be determined by the following minimum requirements:

**Level 1 --** Needing help with at least 2 of the 9 activities in Table A, so long as those activities are from at least 2 different clusters.

**Level 2 --** Needing help with at least 5 of the 9 activities in Table A, so long as those activities are from all 3 different clusters

### Table A:
#### Activity and Cluster Table

| Cluster 1 | = | Toenails | Bathing | Dressing |
|-----------|---|----------|---------|----------|
| Cluster 2 | = | Stairs | Outside | Ambulation |
| Cluster 3 | = | Medicating | Transference | Eating |

**DEFINITIONS:**

**Help** means always requiring the assistance of at least one other person and/or some assistive device not commonly used. Common devices include, but are not limited to, canes, handrails, handheld shower heads, shoes without laces, manually operated toenail clippers, or eyeglasses.

**Ambulation** means the ability to walk without help on a level floor inside a residence.

**Bathing** means the ability to take a bath or shower without help.

**Dressing** means the ability to dress or undress without help.

**Eating** means the ability to maintain an adequate food and fluid intake without help.

**Medicating** means the ability to take prescribed medicine without help.

**Outside** means the ability to go outside in good weather and walk one-quarter mile without help.

**Stairs** means the ability to climb a minimum of six stairs without help.

**Toenails** means the ability to cut, clip or trim toenails without help.

**Transference** means the ability to move from bed to chair or chair to bed without help.

**Conditions of Eligibility** Annuity payments must have begun before the Annuitant's 80th birthday in order to be eligible for the increased annuity payments. Increased annuity payments are only available for Annuity Options B, C, F, and G.

**Approving the Disability Request --** A request for increased annuity payments because of disability cannot be made until two years after annuity payments have begun. If the request is approved, the increased annuity payment will begin with the first annuity payment made 90 days after the request is filed.

To consider the first request and each later request, we must receive a completed request form that details the level of disability. It must be completed by a health care professional who is not a member of the Annuitant's family. A health care professional includes a medical doctor, a registered nurse or a licensed practical nurse. We may verify the request by use of an assessment prepared by an independent agency, which will be paid by us. We have the right to require continuing proof of disability.

**Rehabilitation --** If rehabilitation to a lower level of disability occurs, we will reduce or stop the increased annuity payment accordingly. If a new period of disability occurs, a new request must be filed. If approved, the increased annuity payments will be made according to the new level of disability.

**Death of Annuitant --** If the Annuitant dies, the increased annuity payments will stop. However, the remainder of any certain or joint and survivor annuity payments will continue as defined in the Annuity Option section.

8

## GENERAL PROVISIONS

**The Contract Consists of the Policy and the Application --** We have issued this policy in consideration of the application and the premium payment. A copy of the application is attached and is a part of this policy. The policy and the application together are the entire contract. All statements made by or for the Annuitant are considered representations and not warranties.

**Misstatement of Age or Sex in the Application --** If there is a misstatement of the Annuitant's or the Beneficiary's age or sex in the contract, we will adjust the annuity payments to that which the premiums paid would purchase at the correct age or sex. Any underpayment as a result of such misstatement must be paid immediately in one sum. Any overpayment will be deducted from the current or succeeding payment due under the policy.

**Annual Report --** We will send you a report at least once a year showing the premium payments, interest credited, partial Surrenders, and all current values.

**No Dividends are Payable --** This is a nonparticipating policy. It does not participate in our profits or surplus.

**Notice --** Any notice given under the provisions of this policy will be sent to your last known address and to any assignee of record.

**Who Can Make Changes in the Policy --** Only our President or a Vice President together with our Secretary have the authority to make any changes in this policy. Any change must be in writing.

**Annuity Date --** The Annuity Date is shown on the Policy Schedule. The Annuity Date is the date on which annuity payments begin. However you may elect a date earlier or later than the one shown.

## ANNUITY OPTIONS

At the Annuity Date, we will make annuity payments according to the Annuity Option elected. We may require proof of the Annuitant's age and sex. The age used for Annuity Options will be the Annuitant's age at the Annuity Date. The Annuitization Value will be used to calculate the annuity payments if the policy has been in force for at least five years and the annuity payments are paid in an Annuity Option which extends over a period of at least ten years or over the life of the Annuitant. If no option is elected, Option C (Installments for Life with a Guaranteed Period of 10 years) will be automatic. Options other than those listed below may be arranged with our agreement. We will pay the annuity payments as requested either monthly, quarterly, semi-annually or annually.

**Option A: Installments for a Guaranteed Period --** We will pay equal installments for a guaranteed period from ten to thirty years. Each installment will consist of part benefit and part interest. Installments will be based on purchase rates we declare, but the purchase rates will never be less than the purchase rates in Table 1.

**Option B: Installments for Life --** We will pay equal installments as long as the Annuitant is living. Installments will be based on purchase rates we declare, but the purchase rates will never be less than the purchase rates in Table 2.

**Option C: Installments for Life with a Guaranteed Period --** We will pay equal installments as long as the Annuitant is living. If the Annuitant dies before the guaranteed period has expired, annuity payments will continue to the Beneficiary until the end of the selected guaranteed period. The guaranteed period may be either five, ten, fifteen, or twenty years. Installments will be based on purchase rates we declare, but will never be less than the purchase rates in Table 2.

**Option D: Benefit Deposited For Ten Years with Interest --** We will hold the benefit on deposit for at least ten years. It will earn interest at such rates as we declare, but no less than $2^1/2\%$ annually. We will pay the earned interest in the frequency requested. At the end of the ten year period, we will pay you the remaining value in a lump sum or you may elect another Annuity Option. You may also elect another Annuity Option extending over at least ten years or over the life of the Annuitant at any time before the end of the ten years.

**Option E: Installments of a Selected Amount --** We will pay installments of a selected amount until we have paid the entire benefit and accumulated interest. It will earn interest at such rates as we declare, but never less than $2^1/2\%$ annually. Refer to the introductory paragraph of this section for the requirements to receive the Annuitization Value.

**Option F: Joint and Survivor Annuity --** We will pay equal installments until the deaths of the Annuitant and contingent Annuitant. Installments will be based on purchase rates we declare, but the purchase rates will never be less than the purchase rates shown in Table 3.

**Option G: Joint and 2/3 Survivor Annuity --** We will pay equal installments while both the Annuitant and contingent Annuitant are living. Two-thirds of the original amount will continue for the life of the surviving Annuitant after the death of an Annuitant. Installments will be based on purchase rates we declare, but the purchase rates will never be less than the purchase rates shown in Table 4.

9

## PURCHASE RATE TABLES

Purchase Rate Tables are based on 2¹/₂% interest and the 1983 Individual Annuity Mortality Tables.

VALUES FOR AGES NOT SHOWN WILL BE FURNISHED UPON REQUEST

| TABLE 1, PAYMENTS CERTAIN Monthly Installments, per $1,000 of applicable annuity value. | | | TABLE 2, LIFE AND MINIMUM GUARANTEED TERM Monthly Installments, per $1,000 of annuity value, payable for the number of years specified and thereafter during the lifetime of the Annuitant. | | | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Years Certain | Amount of Monthly Installments | Ann. Age on Annuity Date | Life Male Ann. | Female Ann. | 10 Years C & L Male Ann. | Female Ann. | 20 Years C & L Male Ann. | Female Ann. |
| | 10 | $9.39 | 59 | $4.93 | $4.39 | $4.81 | $4.33 | $4.42 | $4.14 |
| | 11 | 8.64 | 60 | 5.07 | 4.50 | 4.93 | 4.43 | 4.49 | 4.21 |
| | 12 | 8.02 | 61 | 5.22 | 4.61 | 5.06 | 4.54 | 4.55 | 4.28 |
| | 13 | 7.49 | 62 | 5.37 | 4.73 | 5.19 | 4.65 | 4.62 | 4.35 |
| | 14 | 7.03 | 63 | 5.54 | 4.87 | 5.32 | 4.77 | 4.68 | 4.43 |
| | 15 | 6.64 | 64 | 5.72 | 5.00 | 5.47 | 4.89 | 4.74 | 4.50 |
| | 16 | 6.30 | 65 | 5.91 | 5.15 | 5.62 | 5.02 | 4.80 | 4.57 |
| | 17 | 6.00 | 66 | 6.11 | 5.31 | 5.77 | 5.16 | 4.86 | 4.65 |
| | 18 | 5.73 | 67 | 6.33 | 5.48 | 5.93 | 5.31 | 4.91 | 4.71 |
| | 19 | 5.49 | 68 | 6.56 | 5.67 | 6.10 | 5.46 | 4.96 | 4.78 |
| | 20 | 5.27 | 69 | 6.81 | 5.87 | 6.26 | 5.62 | 5.00 | 4.85 |
| | | | 70 | 7.08 | 6.08 | 6.44 | 5.79 | 5.04 | 4.90 |
| | | | 71 | 7.36 | 6.31 | 6.61 | 5.96 | 5.08 | 4.96 |
| | | | 72 | 7.66 | 6.56 | 6.79 | 6.15 | 5.11 | 5.01 |
| | | | 73 | 7.99 | 6.83 | 6.97 | 6.34 | 5.14 | 5.05 |
| | | | 74 | 8.34 | 7.13 | 7.15 | 6.53 | 5.17 | 5.09 |
| | | | 75 | 8.71 | 7.44 | 7.33 | 6.73 | 5.19 | 5.13 |

### TABLE 3, JOINT AND SURVIVOR ANNUITY

Monthly Installment per $1,000 of annuity value, payable as long as either the Annuitant or the contingent Annuitant is living.

| Age of Male on Annuity Date | Age of Female on Annuity Date | | | | | | |
|---|---|---|---|---|---|---|---|
| | 50 | 55 | 60 | 65 | 70 | 75 | 80 |
| 50 | $ 3.35 | $ 3.50 | $ 3.64 | $ 3.75 | $ 3.84 | $ 3.91 | $ 3.95 |
| 55 | 3.44 | 3.63 | 3.83 | 4.01 | 4.16 | 4.27 | 4.35 |
| 60 | 3.51 | 3.75 | 4.01 | 4.27 | 4.51 | 4.71 | 4.85 |
| 65 | 3.56 | 3.84 | 4.16 | 4.52 | 4.88 | 5.21 | 5.47 |
| 70 | 3.59 | 3.90 | 4.28 | 4.73 | 5.22 | 5.73 | 6.19 |
| 75 | 3.62 | 3.95 | 4.37 | 4.89 | 5.51 | 6.23 | 6.95 |
| 80 | 3.63 | 3.98 | 4.42 | 4.99 | 5.73 | 6.65 | 7.68 |

### TABLE 4, JOINT AND 2/3 SURVIVOR ANNUITY

Monthly Installment per $1,000 of annuity value, payable while the Annuitant or contingent Annuitant are both living. 2/3 of the amount of payment continues for the life of the remaining Annuitant after one Annuitant dies.

| Age of Male on Annuity Date | Age of Female on Annuity Date | | | | | | |
|---|---|---|---|---|---|---|---|
| | 50 | 55 | 60 | 65 | 70 | 75 | 80 |
| 50 | $ 3.65 | $ 3.83 | $ 4.02 | $ 4.23 | $ 4.45 | $ 4.70 | $ 4.94 |
| 55 | 3.80 | 4.01 | 4.24 | 4.50 | 4.77 | 5.07 | 5.37 |
| 60 | 3.97 | 4.21 | 4.48 | 4.80 | 5.14 | 5.52 | 5.90 |
| 65 | 4.14 | 4.42 | 4.75 | 5.13 | 5.57 | 6.05 | 6.56 |
| 70 | 4.33 | 4.64 | 5.02 | 5.49 | 6.03 | 6.67 | 7.35 |
| 75 | 4.51 | 4.86 | 5.30 | 5.84 | 6.51 | 7.32 | 8.24 |
| 80 | 4.69 | 5.07 | 5.56 | 6.19 | 6.98 | 7.99 | 9.19 |

10

## TABLE OF GUARANTEED CASH VALUES

The following Table, based on an initial premium payment of $10,000, shows the guaranteed Cash Value that would accumulate prior to the time you elect to receive annuity payments. Guaranteed Cash Values are based on an interest rate of 3%.

| End of Policy Year | Value | End of Policy Year | Value |
|---|---|---|---|
| 1 | $ 9,270 | 21 | $ 16,743 |
| 2 | 9,548 | 22 | 17,245 |
| 3 | 9,835 | 23 | 17,762 |
| 4 | 10,130 | 24 | 18,295 |
| 5 | 10,433 | 25 | 18,844 |
| 6 | 10,746 | 26 | 19,409 |
| 7 | 11,069 | 27 | 19,992 |
| 8 | 11,401 | 28 | 20,591 |
| 9 | 11,743 | 29 | 21,209 |
| 10 | 12,095 | 30 | 21,845 |
| 11 | 12,458 | 31 | 22,501 |
| 12 | 12,832 | 32 | 23,176 |
| 13 | 13,217 | 33 | 23,871 |
| 14 | 13,613 | 34 | 24,587 |
| 15 | 14,022 | 35 | 25,325 |
| 16 | 14,442 | 36 | 26,085 |
| 17 | 14,876 | 37 | 26,867 |
| 18 | 15,322 | 38 | 27,673 |
| 19 | 15,782 | 39 | 28,503 |
| 20 | 16,255 | 40 | 29,358 |

**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA**
**300 South Highway 169**
**Minneapolis, MN 55426-1191**

(800) 950-5872

The Flexible Premiums paid for the policy will be accumulated to
provide an income payable at the Annuity Date. A Death Benefit is
payable before the Annuity Date.  Nonparticipating, no annual dividends.

P6500N

©1998 LifeUSA

# EXHIBIT C

# Flexible Premium Deferred Annuity

The Flexible Premiums paid for the policy will be accumulated to provide an income payable at the Annuity Date. A Death Benefit is payable before the Annuity Date. Nonparticipating, no annual dividends.

Signed for the Company at its Home Office on the date of issue.

Vice President and Secretary

President

YOUR 20 DAY RIGHT TO EXAMINE YOUR POLICY
You may return your policy within 20 days after receiving it if you are dissatisfied for any reason. You may return your policy to your agent or our Home Office. We will void the policy and mail a refund of the premium you paid within 10 days of receipt.

This is a legal contract between you and the Company.

**READ YOUR POLICY CAREFULLY**

ADMINISTRATION AND SERVICE PROVIDED BY

Life**USA**®  Box 59060
Minneapolis. MN 55459-0060
1-800-950-1962

NB2042S  R-4/97

**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA**
**300 South Highway 169**
**Minneapolis, MN 55426-1191**

"A Stock Company"

P6500N

# DEFINITIONS

This section provides information that is specific to the benefits that you have chosen. Most of these terms are capitalized throughout the policy to help you easily recognize them.

**We, our, us** or **the Company** means Allianz Life Insurance Company of North America.

**You** and **your** means the owner of this policy named in the application, unless later changed. The owner may be other than the Annuitant.

**Age** means the Annuitant's age on the last birthday.

**Annuitant** means the person upon whose life the annuity payments are based as shown on the Policy Schedule.

**Annuitization Value** is the amount used to calculate the annuity payments if the Annuity Option payout requirements are met. The requirements are described in the Annuitization Value provision.

The **Annuity Date** is the date on which annuity payments begin.

The **Beneficiary** is the person or entity to whom we will pay the Death Benefit if the Annuitant dies. The Beneficiary is named in the application unless you subsequently change the Beneficiary designation.

**Cash Value** is the amount paid upon a lump sum surrender, upon electing to receive annuity payments over a period of less than ten years, or upon electing to receive annuity payments before the fifth policy anniversary. It is described in the Cash Value section.

**Contingent Annuitant** is the person, you choose, upon whose life Annuity Option F and G are based.

**Deferral** is the period during which the policy is in force. This period is prior to the date annuity payments begin.

**Flexible Premium** means the consideration paid for the policy whether paid in one sum or in varying amounts during the first policy year.

**Payout** is the period during which an Annuity Option has been elected and annuity payments are being received. This period follows the Annuity Date.

The **Policy Date** is shown in the Policy Schedule and determines the monthly anniversary date, policy anniversaries, and policy years.

A **Proportional Reduction Factor** is equal to the Cash Value after a partial surrender divided by the Cash Value before a partial surrender. A Proportional Reduction Factor is calculated for each partial surrender.

**Surrender** is any of the following.

1. A full or partial lump sum withdrawal;

2. Electing to receive annuity payments under any Annuity Option before the fifth policy anniversary; or

3. Electing to receive annuity payments under Annuity Option A, D, or E for less than 10 policy years.

# GUIDE TO POLICY PROVISION

Alternate Annuity Option I ............................................. 7

Alternate Annuity Option II............................................ 8

Annuitization Value ...................................................... 5

Annuity Date ................................................................ 9

Annuity Options............................................................ 9

Beneficiary.................................................................... 4

Cash Value ................................................................... 5

Death Benefit ............................................................... 6

Definitions.................................................................... 2

Full Surrender ............................................................. 6

General Provisions ...................................................... 9

Guaranteed Values (Basis of Values) .......................... 6

Misstatement of Age or Sex.......................................... 9

Ownership .................................................................... 4

Partial Surrender .......................................................... 6

Policy Schedule............................................................. 3

Premium........................................................................ 6

Purchase Rate Tables ................................................ 10

Table of Guaranteed Cash Values .............................. 11

Termination ................................................................... 5

POLICY SCHEDULE

NOTE:  THE ANNUITY DATE IS NORMALLY THE LATER OF THE POLICY ANNIVERSARY FOLLOWING THE
       ANNUITANT'S 70TH BIRTHDAY OR TEN YEARS FOLLOWING THE POLICY DATE.
       HOWEVER, YOU MAY CHOOSE A DATE WHICH IS EARLIER OR LATER.


**GUARANTEED INTEREST RATE:**
    DURING DEFERRAL:
        ANNUITIZATION VALUE:        5.00% FOR THE FIRST POLICY YEAR,
                              3.00% THEREAFTER
        CASH VALUE:        3.00% FOR ALL POLICY YEARS
    DURING PAYOUT:        2.50%


**ANNUITIZATION BONUS PERCENTAGE:**        10.00%

| | | | |
|---|---|---|---|
| **ANNUITANT:** | BRUCE B WHITMAN | **AGE AND SEX:** | 49    MALE |
| **POLICY NUMBER:** | 6949081 | **POLICY DATE:** | 02/13/2001 |
| **INITIAL PREMIUM:** | $10,000.00 | **MONTHLY ANNIVERSARY DATE:** | 13 |
| | | **ANNUITY DATE:** | 02/13/2022 |

**OWNER AND BENEFICIARY:**    AS NAMED IN APPLICATION OR AS LATER CHANGED.

# ANNUITY POLICY LOAN ENDORSEMENT

This endorsement is attached to the policy as of the Policy Date and amends the policy as follows:

> **Definition of terms** - Unless redefined below, the terms defined in the policy will have the same meaning when used in this Endorsement. For purposes of this Endorsement, the following definition applies.
>
> > **Account Value** - The policy value from which loans or surrenders are withdrawn as described in the policy. The value is defined as the Cash Value or the Surrender Value (minus any previous policy loans).
>
> You may borrow up to one half of the Account Value of this policy. No loan will be allowed for an amount less than $1,000 or for an amount that would reduce the remaining Account Value below $500. In no event can the aggregate amount borrowed exceed $50,000. Loan proceeds will be paid to you from the Account Value on a last in/first out basis.
>
> You must request a loan in writing in a manner acceptable to us and assign the policy to us as collateral for the loan. We may defer granting a loan for up to six months after we receive your request. We may limit the frequency at which loans are made.
>
> You may repay a loan at any time. An outstanding loan balance plus any unpaid interest due will be deducted from the Death Benefit. Upon annuitization, an outstanding loan balance plus unpaid interest due will be treated in the same manner as a partial surrender.
>
> This policy will terminate if an outstanding loan balance plus unpaid interest due equals or exceeds the Account Value. Termination will be effective 31 days after we mail notice to you at your last known address.
>
> The loan interest rate is 7.4% in advance. Unpaid interest will be added to your loan. The Account Value and the Annuitization Value, if any, may earn interest on the loaned amount at a rate lower than the current declared rate in effect. That rate will never be lower than the minimum rate guaranteed in the policy.

In all other respects the provisions, conditions, exceptions and limitations contained in the policy remain unchanged.

## ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA

*Suzanne O. Pepin*

Vice President and Secretary

PE-LN/N

# AMENDMENT ENDORSEMENT

This endorsement is attached to the policy as of the Policy Date and amends the policy as follows.

**ALTERNATE ANNUITIZATION OPTION** (added):
After annuity payments have begun, the benefits may be increased if the Annuitant, named in application that is attached to this policy, becomes disabled. This benefit does not apply to any contingent/joint Annuitant. The increased annuity payments will continue as long as the disability lasts. The increased annuity payment will be a constant percentage of the basic annuity payment. The increased annuity payment depends on the level of disability. Annuity payments will be increased 30% for Level 1 and 60% for Level 2.

The levels are defined by the amount of help the Annuitant needs to perform various activities. If he/she always needs help to perform basic self-care activities, the level will be determined by the following minimum requirements:

**Level 1** – Needing help with at least 2 of the 9 activities in Table A, so long as those activities are from at least 2 different clusters.

**Level 2** – Needing help with at least 5 of the 9 activities in Table A, so long as those activities are from all 3 different clusters.

**Table A:**
Activity and Cluster Table

| Cluster 1 | = | Toenails | Bathing | Dressing |
|---|---|---|---|---|
| Cluster 2 | = | Stairs | Outside | Ambulation |
| Cluster 3 | = | Medicating | Transference | Eating |

**Definitions** – Definitions for this endorsement follow.

**Help** means always requiring the assistance of at least one other person and/or some assistive device <u>not</u> commonly used. <u>Common</u> devices include, but are not limited to, canes, handrails, handheld shower heads, shoes without laces, manually operated toenail clippers, or eyeglasses.

**Ambulation** means the ability to walk without help on a level floor inside a residence.

**Bathing** means the ability to take a bath or shower without help.

**Dressing** means the ability to dress or undress without help.

**Eating** means the ability to maintain an adequate food and fluid intake without help.

**Medicating** means the ability to take prescribed medicine without help.

**Outside** means the ability to go outside in good weather and walk one-quarter mile without help.

**Stairs** means the ability to climb a minimum of six stairs without help.

**Toenails** means the ability to cut, clip or trim toenails without help.

**Transference** means the ability to move from bed to chair or chair to bed without help.

**Conditions of Eligibility** – Annuity payments must have begun before the Annuitant's 85th birthday in order to be eligible for the increased annuity payments. Increased annuity payments are only available for any of the following Annuity Options, if available in the attached policy: Installments for Life, Installments for Life with a Guaranteed Period, Installments of a Selected Amount, Joint and Survivor Annuity, or Joint and 2/3 Survivor Annuity.

**Approving the Disability Request** – A request for increased annuity payments because of disability cannot be made until two years after annuity payments have begun. If the request is approved, the increased annuity payment will begin with the first annuity payment made 90 days after the request is filed.

To consider the first request and each later request, we must receive a completed request form that details the level of disability. It must be completed by a health care professional who is not a member of the Annuitant's family. A health care professional includes a medical doctor, a registered nurse or a licensed practical nurse. We may verify the request by use of an assessment prepared by an independent agency, which will be paid by us. We have the right to require continuing proof of disability.

**Rehabilitation** – If rehabilitation to a lower level of disability occurs, we will reduce or stop the increased annuity payment accordingly. If a new period of disability occurs, a new request must be filed. If approved, the increased annuity payments will be made according to the new level of disability.

**Death of Annuitant** – If the Annuitant dies, the increased annuity payments will stop. However, the remainder of any certain or joint and survivor annuity payments will continue as defined in the policy to which this endorsement is attached.

In all other respects the provisions, conditions, exceptions and limitations contained in the policy remain unchanged and apply to this endorsement.

## ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA

Vice President and Secretary                     President

PE1072 N

**ALTERNATE ANNUITY OPTION III (Period Certain Payout not exceeding life expectancy)**

You may request at any time or on the Annuity Date an irrevocable settlement in equal monthly installments for a period certain for the life expectancy of the Annuitant. The Annuitant's life expectancy will be as indicated in published life expectancy tables provided by the Office of the Actuary of the Social Security Administration. Each installment will consist of part benefit and part interest. Installments will be based on purchase rates we declare, but the purchase rates will never be less than those based upon 2.5% interest and the life expectancy tables as issued by the Office of the Actuary of the Social Security Administration. The Life Expectant Fund Value will be used to calculate the annuity payments.

The Life Expectant Fund Value is computed as a percentage of the Annuitization Value where the percentage varies by contract duration as follows:

| Policy Year | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11+ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Percentage of Annuitization Value | 90% | 91% | 92% | 93% | 94% | 95% | 96% | 97% | 98% | 99% | 100% |

The Life Expectant Fund Value will never be lower than the Cash Surrender Value.

We will require proof of the Annuitant's age and sex. The age used for the Annuity Option will be the Annuitant's age on the date the policy changes from a deferred status to one of payout.

In all other respects the provisions, conditions, exceptions and limitations contained in the policy remain unchanged and apply to this endorsement.

## ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA

Vice President and Secretary          President

PE1076N

# Notice Concerning Coverage
# Limitations and Exclusions under the Ohio Life
# and Health Insurance Guaranty Association Act

Residents of Ohio who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Ohio Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policy holders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the guaranty association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

**The Ohio Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Ohio. You should not rely on coverage by the Ohio Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.**

**Coverage is *NOT* provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus. You should check with your insurance company representative to determine if you are only covered in part or not covered at all.**

**Insurance companies or their agents are required by law to give or send you this notice. *However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.***

**Ohio Life and Health Insurance Guaranty Association**
**1840 Mackenzie Drive**
**Columbus, Ohio 43220**

**Ohio Department of Insurance**
**2100 Stella Court**
**Columbus, Ohio 43266-0566**

The state law that provides for this safety-net coverage is called the Ohio Life and Health Insurance Guaranty Association Act. On the back of this page is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

NB2061N                              (Please turn to back of page)

## COVERAGE

Generally, individuals will be protected by the life and health insurance guaranty association if they live in Ohio and hold a life or health insurance contract, annuity contract, unallocated annuity contract, or if they are insured under a group insurance contract, issued by a member insurer. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are **not** protected by this association if:
• they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
• the insurer was not authorized to do business in this state;
• their policy was issued by a medical, health or dental care corporation, an HMO, a fraternal benefit society, a mutual protective association or similar plan in which the policy holder is subject to future assessments, or by an insurance exchange.

The association also does **not** provide coverage for:
• any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
• any policy of reinsurance (unless an assumption certificate was issued);
• interest rate yields that exceed an average rate;
• dividends;
• credits given in connection with the administration of a policy by a group contract holder;
• employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them)

## LIMITS ON AMOUNT OF COVERAGE

The act also limits the amount the association is obligated to pay out: The association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the association will pay a maximum of $300,000 -- no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. Within this overall $300,000 limit, the association will not pay more than $100,000 in cash surrender values, $100,000 in health insurance benefits, $100,000 in present value of annuities, or $300,000 in life insurance death benefits -- again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages.

*Note to benefit plan trustees or other holders of unallocated annuities (GICs, DACs, etc.) covered by the act:* For unallocated annuities that fund governmental retirement plans under Section 401(k), 403(b) or 457 of the Internal Revenue Code, the limit is $100,000 in present value of annuity benefits including net cash surrender and net cash withdrawal per participating individual. In no event shall the association be liable to spend more than $300,000 in the aggregate per individual. For covered unallocated annuities that fund other plans, a special limit of $1,000,000 applies to each contractholder, regardless of the number of contracts held with the same company or number of persons covered. In all cases, of course, the contract limits also apply.

# APPLICATION FOR ANNUITY

**Allianz Life Insurance Company of North America**
PO Box 59060
Minneapolis, MN 55459-0060
800/950-6979

**FEB 26 2001**

## 1. ANNUITANT

Bruce        B                Whitman
First        Middle           Last

Sex ☒ Male ☐ Female  Date of Birth ████ 5  Age 49
Social Security Number ████████ - 9518
Phone Number  Home ( 513 ) 531-1345
Work ( 513 ) 558-4275
Mailing Address 7137 Fairoaks Dr
City, State, Zip Code Cincinnati, OH 45237

## 2. OWNER (if other than the Annuitant)

☒ Individual  ☐ Corporation  ☐ Partnership  ☐ Trust
☐ Joint (Owners are joint tenants with rights of survivorship)
Full Name Roy M Whitman
Relationship Father      Date of Birth ████ 25
Social Security, Tax or Employer ID# ████████ 3679
Owner's Mailing Address _____

Contingent Owner, if applicable _____
If trust is named, please provide date of trust and trustee's
name  Date of trust ___/___/___
Trustee _____

## 3. BENEFICIARY FOR ANNUITANT

Primary Roy Whitman
Relationship to Annuitant Father
Contingent Esther Whitman
Relationship to Annuitant Step-mother
If trust is named, please provide date of trust and trustee's
name  Date of trust ___/___/___
Trustee _____

In the following Community Property States: AZ, CA, ID, LA, NV, NM, TX, WI
and WA. If spouse is not named as primary beneficiary, please acknowledge by
signing below: "I waive my Community Property interest and give my consent for
someone other than myself to be designated as Primary Beneficiary to this policy."

Spousal Consent _____

## 4. REPLACEMENT

Will life insurance or annuities be replaced if this annuity is issued?
☐ YES*  ☒ NO
*Complete replacement portion of the application in AR, CA, CO, DE, FL, HI,
ID, IL, IN, IA, KS, LA, MD, MA, MN, MS, MO, NE, NC, NM, OH, OK, OR, PA,
SC, SD, TN, UT, WA, WI, WV for any annuities or life insurance being replaced
It is also required in AL, AZ, GA, KY, MI, MT, NV, NH, NJ, RI, VT, VA, WV for
any life insurance being replaced by this annuity.

## 5. ANNUITY PRODUCT  (Select one of the following)

**Single Premium**
☐ POWERHOUSE℠★
☐ IDEAL℠ Index 75★
☒ Accumulator℠ Bonus Maxxx℠★#
☐ IDEAL℠ Annuity★

**Immediate.**
☐ WealthCare℠★◆

☐ Other _____

**Flexible Premium.**
☐ 10% Cash Bonus★
☐ Elect monthly payout of bonus
☐ Do NOT withhold taxes
☐ FlexDex Bonus℠★
☐ Power Rate 5℠★
☐ Accumulator℠ Classic★
☐ Accumulator℠ X★
☐ Total Security Annuity℠
   (Payroll deduction or 403b)

★ Complete appropriate Statement of Understanding for this product
  and return to Home Office along with this application
# Premium payments are allowed during the first year ONLY
◆ Complete WealthCare Immediate Supplemental Annuity Application

## 6. TYPE OF ANNUITY

☐ Qualified              ☒ Nonqualified
  ☐ Rollover  ☐ Transfer      ☐ 1035 Exchange
☐ IRA  ☐ Roth IRA  ☐ Simple IRA  Tax Year _____
☐ Other _____  (SEP, 403b, KEOGH, etc )

## 7. PREMIUMS

Cash Submitted with Application          $ 10,000
Estimated Transfer/Rollover/1035 Amount  $ _____
Billed Premium Amount                    $ _____
Select mode
☒ Single  ☐ Annual  ☐ Semi-Annually  ☐ Quarterly
☐ Monthly  (Complete PAC authorization and provide void check )

## 8. COMPLETE ONLY IF PAYROLL DEDUCTION

Premium mode desired _____
Employer's Name _____
Group ID# _____  ☐ Add On  ☐ New
Length of employment _____ years  _____ months
Currently working full time (minimum 30 hours per week)?
☐ YES  ☐ NO
Employer's Contribution (if applicable)  $ _____

## 9. SPECIAL REQUESTS

## YOUR COMPANY REPRESENTATIVE

Agent Name Frederick Tucker  Phone # ( 513 ) 731-3334  % Split 100  Agent # 010-011747
Agent Name _____  Phone # ( ___ ) _____  % Split _____  Agent # _____

## HOME OFFICE CHANGES TO THE APPLICATION – (Not applicable in Pennsylvania or West Virginia)

A1                                    SIGNATURES REQUIRED ON BACK OF THIS FORM

**REPLACEMENT (Complete if life insurance or annuities will be replaced.)**

By signing this application, I acknowledge that I have received and read a copy of the Replacement Notice and that information was completed by

_____ prior to taking an application
Applicant's Name (Please print)

_____ City    FEB 2 6 2001   State
Address of the Applicant

_____ City          State
Agent's Name and Address

The Proposed Policy is _____    $ _____
         Type of Policy - Generic Name         Face Amount

The following policies may be replaced as a result of this transaction

| Insurer as it appears on the policy | Insured as it appears on the policy | Policy Number |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

**AGREEMENT AND SIGNATURES**

It is agreed that (1) All statements and answers given above are true and complete to the best of my knowledge. (2) This application shall become part of any annuity contract issued by the Company, (3) If proof of the Annuitant's age is not given with the application, the Annuitant will furnish the Company such proof before annuity payments begin, (4) Any changes made in this application shall be subject to written consent of the Owner/applicant. (5) Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application containing a false or deceptive statement is guilty of insurance fraud

Signed at _CINCINNATI_ _OHIO_ on this _20_ day of _FEB_ , _2001_
        City, State                                  Month           Year

_Roy J Whitman_
Proposed Annuitant's Signature

**To be answered by Licensed Resident Agent:** I certify that the statements of the applicant have been correctly recorded in this application. To the best of my knowledge, the insurance applied for in this application ✓ will not or _____ will replace existing insurance

_____
Owner (if other than Annuitant)

_Herbert D Tucker_
Agent's Signature/Witness

A2-F                             **RETURN TO HOME OFFICE**         Allianz Life Insurance Company of North America

**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA**

## Indexed Payout Rider

The Company has issued this rider as a part of the policy to which it is attached.

### DEFINITIONS

The **Benefit Election Notice** will be mailed to you at the beginning of a Payout Index Term. The Notice will include the following values for that Payout Index Term: the Initial Payout Index Value, the Payout Index, the Payout Index Cap, the Payout Index Term, the Payout Participation Rate, and the Rider Charge Percentage.

The **Index Increase Amount** is never less than zero and equals (a) minus (b), where:
(a) is the average of the Monthly Payout Index Values during the Payout Index Term; and
(b) is the Initial Payout Index Value.

The **Initial Payout Index Value** is the value of the Payout Index at the close of the Last Business Day before the start of a Payout Index Term. This value is shown in the Benefit Election Notice.

The **Last Business Day** is the last day that the Payout Index was traded or calculated for a specified date.

The **Monthly Payout Index Value** is the value of the Payout Index at the close of the Last Business Day before each Payout Monthly Anniversary Date.

The **Payout Anniversary Date** is the day and month which correspond to the day and month that Payouts were initially elected from the policy to which this rider is attached.

The **Payout Increase** is the amount by which all future Payouts will increase due to the performance of the Payout Index during a Payout Index Term. This increase will occur for all Payouts after the end of a Payout Index Term. The Payout Increase is (a) times (b), where:
(a) is the first Payout of the Payout Index Term (net of Rider Charge); and
(b) is the Payout Increase Rate.

The **Payout Increase Rate** is never greater than the Payout Index Cap and equals (a) times (b) divided by (c), where:
(a) is the Payout Participation Rate;
(b) is the Index Increase Amount; and
(c) is the Initial Payout Index Value.

The **Payout Index** is shown in the Benefit Election Notice. If the publication of the Payout Index is discontinued or the calculation of the Payout Index is changed substantially, we will substitute a suitable Payout Index and provide you Notice.

The **Payout Index Cap** is the maximum increase in the Payout Increase Rate for a Payout Index Term. This cap is shown in the Benefit Election Notice and is guaranteed for that Payout Index Term. The cap ranges from 2.5% to 100%.

The **Payout Index Term** is shown in the Benefit Election Notice. The amount of the Payout Increase is based on the performance of the Payout Index during this period of time.

The **Payout Monthly Anniversary Date** is the day of the month which correspond to the day of the month that Payouts were initially elected from the attached policy.

The **Payout Participation Rate** is shown in the Benefit Election Notice and is guaranteed for that Payout Index Term. This rate is used in the Payout Increase Rate calculation.

**Payouts** are the installments you are receiving under a Settlement Provision or an Annuity Option. Election of Benefits under this rider will result in Payouts being adjusted by all Rider Charges and any Payout Increases.

The **Rider Charge** is the amount by which we reduce all future Payouts at the beginning of each Payout Index Term. This charge is the Rider Charge Percentage for this Payout Index Term multiplied by the Payouts at the beginning of each Payout Index Term. This charge permanently reduces all future Payouts.

The **Rider Charge Percentage** is the percentage shown in the Benefit Election Notice and is guaranteed for that Payout Index Term. This percentage ranges from 0% to 10%.

PR1012N

## INDEX PAYOUT OPTION

**Election of Benefit –** You may elect the Index Payout Benefit on a Payout Anniversary Date if the following conditions are met.
 (a) The Payouts were elected after the fifth policy year;
 (b) The Payouts have been elected under Installments for a guaranteed period of at least 10 years, or installments for life (including life with a period certain or joint and survivor);
 (c) The first Payout is due to you no sooner than one month after the Payouts were initially elected from the attached policy; and
 (d) You have sent a satisfactory written notice to us requesting the Index Payout Option.

**Notification of Benefit –** We will send you a Benefit Election Notice at the beginning of a Payout Index Term. There is a Payout Free Look Provision, so please review the notice immediately to ensure that the values set at the beginning of the Payout Index Term meet your expectations.

We will send you a statement summarizing the Payouts at the end of each Payout Index Term. The statement will identify any Payout Increase and the values used to calculate it.

**Index Payout Benefit –** Any Payout Increase is added to all future Payouts after the end of that Payout Index Term and continues until this rider terminates. If the value of the Payout Increase is not greater than zero or if the rider terminates, no Index Payout Benefit will be credited after the end of that Payout Index Term.

You may discontinue this benefit at the end of any Payout Index Term. If you do not tell us to discontinue this benefit, a new Payout Index Term will begin, a new Rider Charge will apply, and we will send you a new Benefit Election Notice.

## CONSIDERATION

A Rider Charge is applied to all future Payouts. The Rider Charge begins with the first Payout in a Payout Index Term and applies to all Payouts both during and after the Payout Index Term.

## PAYOUT FREE LOOK PROVISION

You may notify us in writing within 20 days after receiving the Benefit Election Notice that you do not want to elect the Indexed Payout Benefit at this time. If a Payout Free Look Provision is elected within the allotted time, the new Index Payout Option will be reversed. The information disclosed in that Benefit Election Notice will no longer apply to the Payouts. The Rider Charge for that Payout Index Term will be reversed and the Payouts will return to the value prior to the beginning of that Payout Index Term. We will pay you any applicable refund resulting from this adjustment.

## AUTOMATIC TERMINATION

This rider will automatically terminate when Payouts are no longer being received.

## NO DIVIDENDS ARE PAYABLE

This rider does not participate in our profits or surplus.

Signed for the Company in Minneapolis, Minnesota and effective on the date the policy is issued unless a different effective date is shown here.

Vice President and Secretary                President

# OWNERSHIP

You are solely entitled to all benefits, rights and privileges under this policy while in deferral and during the lifetime of the Annuitant.

**Death of the Owner --** If you die prior to the date annuity payments begin, the entire interest in the policy will be distributed within five years of your death. The Cash Value will be paid if taken in a lump sum or over a period less than five years. The Annuitization Value will be paid if annuity payments are taken under an Annuity Option over 5 years.

If you die on or after the date annuity payments begin the following will apply.

1. The remaining portion of the policy will be distributed at least as rapidly as under the method of distribution being made as of the date of your death; or
2. If any portion of your interest is payable to, or for the benefit of, a designated individual, such portion will be distributed over the life expectancy of such designated individual (or over a period not extending beyond the life expectancy of such designated individual) and payments must begin within one year of the date of your death.

If your interest is payable to or for the benefit of your spouse, he/she will be treated as the owner of the policy for distribution purposes.

If you die before the Annuitant, your rights will pass to the executor of your estate unless ownership has been otherwise assigned.

**Change of Ownership --** You may transfer ownership of this policy to a new owner while in deferral and during the lifetime of the Annuitant. Notice of the change must be made in writing to our Home Office. We are not liable for any actions taken before receiving notice of the change. A change of ownership does not affect the Beneficiary unless the new owner elects to make a change.

**Assignment of Policy --** You may assign or transfer all or specific rights of your policy. No assignment will be effective until you notify us in writing. We will record your assignment. We will not be responsible for its validity or effect.

# THE BENEFICIARY

**Who Receives the Death Benefit --** We will pay the Death Benefit to the Beneficiary if the Annuitant dies before the Annuity Date. Interest will be paid on the Death Benefit from the date of death to the date of settlement at a rate no less than that required by law.

**Protection of the Death Benefit --** To the extent permitted by law, the Death Benefit will not be subject to the claims of the Beneficiary's creditors.

**If the Beneficiary Dies --** If any Beneficiary dies before the Annuitant, the Beneficiary's interest in the policy will end. If any Beneficiary dies at the same time as the Annuitant, or within 30 days after the Annuitant, that Beneficiary's interest in the policy will end. If the interests of all named Beneficiaries have ended when the Annuitant dies, we will pay the Death Benefit to you as owner. If you are not living at the time, we will pay the Death Benefit to your estate.

**How to Change a Beneficiary --** You may change the named Beneficiary by sending a satisfactory written notice to us. The change will not be effective until we record it at our Home Office. Even if the Annuitant is not living when we record the change, the change will take effect retroactively as of the date signed. Any benefits we pay before we record the change will not be affected. An irrevocable Beneficiary must give written consent before we will change that Beneficiary.

4

## BENEFITS AND VALUES

**Annuitization Value --** 100% of premium payments received during the first policy year will be credited to the Annuitization Value on the date received. The Annuitization Bonus Percentage multiplied by the premium payments received during the first policy year will also be credited to the Annuitization Value on the date premium payments are received. The Annuitization Bonus Percentage is shown on the Policy Schedule. The Annuitization Value on any specified date is equal to the following.

1. The Annuitization Value on the later of the Policy Date or the last monthly anniversary date multiplied by all Proportional Reduction Factors (if any) for all partial surrenders since the last monthly anniversary date;

plus
2. Interest earned on item 1 (above) from the later of the Policy Date or the last monthly anniversary date to the specified date;

plus
3. Premium payments credited to the Annuitization Value (including the corresponding Annuitization Bonus Percentage) since the later of the Policy Date or the last monthly anniversary date to the specified date multiplied by all Proportional Reduction Factors (if any) for all partial Surrenders since the date the premium was received;

plus
4. Interest earned on item 3 (above) since the date the premium was received to the specified date.

The guaranteed minimum interest rate credited to the Annuitization Value is 3%. We may declare a higher interest rate than the guaranteed rate. The rate in effect for the Annuitization Value on the Policy Date is guaranteed for the first policy year; this rate is shown on the Policy Schedule. After the first policy anniversary, we may change the declared rate at our option. The rate declared will never be lower than the guaranteed minimum interest rate. This provision will not apply if annuity payments under an Annuity Option have begun.

You will receive the Annuitization Value if the policy has been in force for at least five years and the annuity payments are paid under an Annuity Option extending over at least ten years or over the life of the Annuitant.

**Cash Value --** 90% of any premium payment received during the first policy year will be credited to the Cash Value. The Cash Value on any specified date is equal to the following.

1. The Cash Value on the later of the Policy Date or the last monthly anniversary date;

minus
2. Any partial Surrender since the later of the Policy Date or the last monthly anniversary date;

plus
3. Interest earned on item 1 (above) minus item 2 (above) from the later of the Policy Date or the last monthly anniversary date to the specified date and interest earned on item 2 (above) from the later of the Policy Date from the last monthly anniversary date to the partial Surrender date;

plus
4. Premium payments as credited to the Cash Value since the later of the Policy Date or the last monthly anniversary date to the specified date;

plus
5. Interest earned on item 4 (above) since the date the premium was received to the specified date.

The guaranteed minimum interest rate credited to the Cash Value is 3%. We may declare a higher interest rate than the guaranteed rate. The rate in effect for the Cash Value on the Policy Date is guaranteed for the first policy year; this rate is shown on the Policy Schedule. After the first policy anniversary, we may change the declared rate at our option. The rate declared will never be lower than the guaranteed minimum interest rate.

The interest rate credited to the Cash Value may be lower than the interest rate credited to the Annuitization Value for the first ten policy years. The interest rate credited to the Cash Value will be equal to the rate credited to the Annuitization Value after the tenth policy anniversary.

**Termination --** The policy will terminate at the earliest of the following.

1. Our receipt of your written request for termination or Surrender;
2. Death of the Annuitant before the Annuity Date; or
3. The Annuity Date.

# BENEFITS AND VALUES

**Full or Partial Surrender --** You may request a full Surrender of this policy for its Cash Value at any time before the Annuity Date. A partial Surrender of the Cash Value may also be requested. 100% of the amount surrendered will be deducted from the Cash Value. A sample Table of Guaranteed Cash Values is included in the policy.

The Annuitization Value after a partial Surrender will be equal to the Annuitization Value prior to the partial Surrender multiplied by the Proportional Reduction Factor for that partial Surrender. You will receive the Annuitization Value if taken as described in the Annuitization Value provision.

You may request up to 15% of the premiums paid as a partial Surrender where 90% of the amount Surrendered will be withdrawn from the Cash Value if the following conditions are met.

1. The partial Surrender is taken after the first policy year;
2. No more than one partial Surrender is taken within a policy year; and
3. The cumulative partial Surrenders do not exceed 15% of the premiums paid.

If a full or partial Surrender or an Annuity Option is requested within one year of a partial Surrender which met the above mentioned conditions, the Cash Value will be reduced by an additional 10% of the prior partial Surrender; this Cash Value reduction will occur prior to fulfillment of this request. This additional reduction will be considered a partial Surrender.

Surrender requests must be given to us in writing. We may delay paying you the requested surrender for up to six months after we receive your written request.

**Death Benefit --** If the Annuitant dies before the Annuity Date (and is not the owner), we will pay the Beneficiary:

1. the Cash Value if taken in a lump sum or if annuity payments are elected over less than five years; or
2. the Annuitization Value if an Annuity Option is elected over a period of at least five years.

You may choose an Annuity Option for the Beneficiary. The Beneficiary may choose an Annuity Option if:

1. you have not elected an Annuity Option prior to the Annuitant's death; and
2. annuity payments have not begun.

Due proof of the Annuitant's death must be received at our Home Office. All payments will be made from our Home Office.

**Basis of Values --** Minimum policy values before the Annuity Date are based on 3% interest compounded annually. Interest is paid from the date of receipt of the premium, to the date of Termination. Minimum annuity payments are based on a minimum $2\frac{1}{2}\%$ interest rate compounded annually.

Paid up annuity values, Cash Values and Death Benefits will never be less than the legal minimums in the state where this policy is delivered. Values are based on the 1983 Individual Annuity Mortality Table.

# PREMIUM

Initial premium for the policy is shown on the Policy Schedule. Additional Premium may be paid at your option during the first policy year and may vary in amount. Subject to the Premium Limitation provision and the following conditions, we will accept any premium payment you send to us while this policy is in force.

1. You may pay the first premium to our authorized representative. You may send subsequent premiums to our Home Office or you may give them to an agent or cashier we authorize. We will give you a receipt if you ask for one.

2. You may pay premium at any time during the first policy year, but only if each premium is at least $25.

**Premium Limitation --** Premium may be refunded if the premium received since the Policy Date exceeds $25,000, unless the Company has granted prior approval of a larger amount. We may refund this amount on a prospective basis. Premiums received after the first policy year will be refunded.

6

## ALTERNATE ANNUITY OPTION I

If the Annuitant is confined to a hospital or long term care facility as described below for at least thirty days in a thirty-five day period, annuity payments under an Annuity Option may be requested. An Annuity Option elected after the first policy year and made over a minimum of five years will be based on the Annuitization Value.

The confinement must begin after the first policy anniversary for the ten year annuity payment period to be reduced. Election of the Annuity Option must be made while confined or within ninety days after discharge.

**Definitions**:

**Hospital --** means a facility which:

1. is licensed and operated as a hospital according to the law of the jurisdiction in which it is located;

2. operates primarily for the care and treatment of sick or injured persons as inpatients;

3. provides continuous 24 hours a day nursing service by or under the supervision of a registered graduate professional nurse (R.N.);

4. is supervised by a staff of licensed physicians; and

5. has medical, diagnostic and major surgical facilities or has access to such facilities.

**Long Term Care Facility --** means a Skilled Nursing Facility or an Intermediate Care Facility or a Residential Care Facility. Long Term Care Facility does not mean:

1. a hospital;

2. a place that primarily treats drug addicts or alcoholics;

3. a home for the aged or mentally ill, a community living center, or a place that primarily provides domiciliary, residency or retirement care; or

4. a place owned or operated by a member of the insured's immediate family.

**Skilled Nursing Facility --** means a facility which:

1. is licensed and operated as a Skilled Nursing Facility according to the law of the jurisdiction in which it is located;

2. provides skilled nursing care under the supervision of a licensed physician;

3. provides continuous 24 hours a day nursing service by or under the supervision of a registered graduate professional nurse (R.N.); and

4. maintains a daily medical record of each patient.

**Intermediate Care Facility --** means a facility which:

1. is licensed and operated as an Intermediate Care Facility according to the law of the jurisdiction in which it is located.

2. provides continuous 24 hours a day nursing service by or under the supervision of a registered graduate professional nurse (R.N.) or a licensed practical nurse (L.P.N.); and

3. maintains a daily medical record of each patient.

**Residential Care Facility --** means a facility which:

1. is licensed and operated as a Residential Care Facility according to the law of the jurisdiction in which it is located;

2. provides nursing care under the supervision of a registered graduate professional nurse (R.N.); and

3. can accommodate three or more persons for a charge.

## ALTERNATE ANNUITY OPTION II

After annuity payments have begun, the benefits may be increased if the Annuitant becomes disabled. This benefit does not apply to any contingent Annuitant. The increased annuity payments will continue as long as the disability lasts. The increased annuity payment will be a constant percentage of the basic annuity payment. The increased annuity payment depends on the level of disability. Annuity payments will be increased thirty percent for Level 1 and sixty percent for Level 2.

The levels are defined by the amount of help the Annuitant to perform various activities. If he/she always needs help to perform basic self-care activities, the level will be determined by the following minimum requirements:

**Level 1** -- Needing help with at least 2 of the 9 activities in Table A, so long as those activities are from at least 2 different clusters.

**Level 2** -- Needing help with at least 5 of the 9 activities in Table A, so long as those activities are from all 3 different clusters

**Table A:**
Activity and Cluster Table

| Cluster 1 | = | Toenails | Bathing | Dressing |
|-----------|---|----------|---------|----------|
| Cluster 2 | = | Stairs | Outside | Ambulation |
| Cluster 3 | = | Medicating | Transference | Eating |

**DEFINITIONS:**

**Help** means always requiring the assistance of at least one other person and/or some assistive device not commonly used. Common devices include, but are not limited to, canes, handrails, handheld shower heads, shoes without laces, manually operated toenail clippers, or eyeglasses.

**Ambulation** means the ability to walk without help on a level floor inside a residence.

**Bathing** means the ability to take a bath or shower without help.

**Dressing** means the ability to dress or undress without help.

**Eating** means the ability to maintain an adequate food and fluid intake without help.

**Medicating** means the ability to take prescribed medicine without help.

**Outside** means the ability to go outside in good weather and walk one-quarter mile without help.

**Stairs** means the ability to climb a minimum of six stairs without help.

**Toenails** means the ability to cut, clip or trim toenails without help.

**Transference** means the ability to move from bed to chair or chair to bed without help.

**Conditions of Eligibility** Annuity payments must have begun before the Annuitant's 80th birthday in order to be eligible for the increased annuity payments. Increased annuity payments are only available for Annuity Options B, C, F, and G.

**Approving the Disability Request** -- A request for increased annuity payments because of disability cannot be made until two years after annuity payments have begun. If the request is approved, the increased annuity payment will begin with the first annuity payment made 90 days after the request is filed.

To consider the first request and each later request, we must receive a completed request form that details the level of disability. It must be completed by a health care professional who is not a member of the Annuitant's family. A health care professional includes a medical doctor, a registered nurse or a licensed practical nurse. We may verify the request by use of an assessment prepared by an independent agency, which will be paid by us. We have the right to require continuing proof of disability.

**Rehabilitation** -- If rehabilitation to a lower level of disability occurs, we will reduce or stop the increased annuity payment accordingly. If a new period of disability occurs, a new request must be filed. If approved, the increased annuity payments will be made according to the new level of disability.

**Death of Annuitant** -- If the Annuitant dies, the increased annuity payments will stop. However, the remainder of any certain or joint and survivor annuity payments will continue as defined in the Annuity Option section.

8

## GENERAL PROVISIONS

**The Contract Consists of the Policy and the Application --** We have issued this policy in consideration of the application and the premium payment. A copy of the application is attached and is a part of this policy. The policy and the application together are the entire contract. All statements made by or for the Annuitant are considered representations and not warranties.

**Misstatement of Age or Sex in the Application --** If there is a misstatement of the Annuitant's or the Beneficiary's age or sex in the contract, we will adjust the annuity payments to that which the premiums paid would purchase at the correct age or sex. Any underpayment as a result of such misstatement must be paid immediately in one sum. Any overpayment will be deducted from the current or succeeding payment due under the policy.

**Annual Report --** We will send you a report at least once a year showing the premium payments, interest credited, partial Surrenders, and all current values.

**No Dividends are Payable --** This is a nonparticipating policy. It does not participate in our profits or surplus.

**Notice --** Any notice given under the provisions of this policy will be sent to your last known address and to any assignee of record.

**Who Can Make Changes in the Policy --** Only our President or a Vice President together with our Secretary have the authority to make any changes in this policy. Any change must be in writing.

**Annuity Date --** The Annuity Date is shown on the Policy Schedule. The Annuity Date is the date on which annuity payments begin. However you may elect a date earlier or later than the one shown.

## ANNUITY OPTIONS

At the Annuity Date, we will make annuity payments according to the Annuity Option elected. We may require proof of the Annuitant's age and sex. The age used for Annuity Options will be the Annuitant's age at the Annuity Date. The Annuitization Value will be used to calculate the annuity payments if the policy has been in force for at least five years and the annuity payments are paid in an Annuity Option which extends over a period of at least ten years or over the life of the Annuitant. If no option is elected, Option C (Installments for Life with a Guaranteed Period of 10 years) will be automatic. Options other than those listed below may be arranged with our agreement. We will pay the annuity payments as requested either monthly, quarterly, semi-annually or annually.

**Option A: Installments for a Guaranteed Period --** We will pay equal installments for a guaranteed period from ten to thirty years. Each installment will consist of part benefit and part interest. Installments will be based on purchase rates we declare, but the purchase rates will never be less than the purchase rates in Table 1.

**Option B: Installments for Life --** We will pay equal installments as long as the Annuitant is living. Installments will be based on purchase rates we declare, but the purchase rates will never be less than the purchase rates in Table 2.

**Option C: Installments for Life with a Guaranteed Period --** We will pay equal installments as long as the Annuitant is living. If the Annuitant dies before the guaranteed period has expired, annuity payments will continue to the Beneficiary until the end of the selected guaranteed period. The guaranteed period may be either five, ten, fifteen, or twenty years. Installments will be based on purchase rates we declare, but will never be less than the purchase rates in Table 2.

**Option D: Benefit Deposited For Ten Years with Interest --** We will hold the benefit on deposit for at least ten years. It will earn interest at such rates as we declare, but no less than $2^1/_2$% annually. We will pay the earned interest in the frequency requested. At the end of the ten year period, we will pay you the remaining value in a lump sum or you may elect another Annuity Option. You may also elect another Annuity Option extending over at least ten years or over the life of the Annuitant at any time before the end of the ten years.

**Option E: Installments of a Selected Amount --** We will pay installments of a selected amount until we have paid the entire benefit and accumulated interest. It will earn interest at such rates as we declare, but never less than $2^1/_2$% annually. Refer to the introductory paragraph of this section for the requirements to receive the Annuitization Value.

**Option F: Joint and Survivor Annuity --** We will pay equal installments until the deaths of the Annuitant and contingent Annuitant. Installments will be based on purchase rates we declare, but the purchase rates will never be less than the purchase rates shown in Table 3.

**Option G: Joint and 2/3 Survivor Annuity --** We will pay equal installments while both the Annuitant and contingent Annuitant are living. Two-thirds of the original amount will continue for the life of the surviving Annuitant after the death of an Annuitant. Installments will be based on purchase rates we declare, but the purchase rates will never be less than the purchase rates shown in Table 4.

9

## PURCHASE RATE TABLES

Purchase Rate Tables are based on 2¹/₂% interest and the 1983 Individual Annuity Mortality Tables.

VALUES FOR AGES NOT SHOWN WILL BE FURNISHED UPON REQUEST

| TABLE 1, PAYMENTS CERTAIN Monthly Installments, per $1,000 of applicable annuity value. | | | TABLE 2, LIFE AND MINIMUM GUARANTEED TERM Monthly Installments, per $1,000 of annuity value, payable for the number of years specified and thereafter during the lifetime of the Annuitant. | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | No. of Years Certain | Amount of Monthly Installments | Ann. Age on Annuity Date | Life | | 10 Years C & L | | 20 Years C & L | |
| | | | | Male Ann. | Female Ann. | Male Ann. | Female Ann. | Male Ann. | Female Ann. |
| | 10 | $9.39 | 59 | $4.93 | $4.39 | $4.81 | $4.33 | $4.42 | $4.14 |
| | 11 | 8.64 | 60 | 5.07 | 4.50 | 4.93 | 4.43 | 4.49 | 4.21 |
| | 12 | 8.02 | 61 | 5.22 | 4.61 | 5.06 | 4.54 | 4.55 | 4.28 |
| | 13 | 7.49 | 62 | 5.37 | 4.73 | 5.19 | 4.65 | 4.62 | 4.35 |
| | 14 | 7.03 | 63 | 5.54 | 4.87 | 5.32 | 4.77 | 4.68 | 4.43 |
| | 15 | 6.64 | 64 | 5.72 | 5.00 | 5.47 | 4.89 | 4.74 | 4.50 |
| | 16 | 6.30 | 65 | 5.91 | 5.15 | 5.62 | 5.02 | 4.80 | 4.57 |
| | 17 | 6.00 | 66 | 6.11 | 5.31 | 5.77 | 5.16 | 4.86 | 4.65 |
| | 18 | 5.73 | 67 | 6.33 | 5.48 | 5.93 | 5.31 | 4.91 | 4.71 |
| | 19 | 5.49 | 68 | 6.56 | 5.67 | 6.10 | 5.46 | 4.96 | 4.78 |
| | 20 | 5.27 | 69 | 6.81 | 5.87 | 6.26 | 5.62 | 5.00 | 4.85 |
| | | | 70 | 7.08 | 6.08 | 6.44 | 5.79 | 5.04 | 4.90 |
| | | | 71 | 7.36 | 6.31 | 6.61 | 5.96 | 5.08 | 4.96 |
| | | | 72 | 7.66 | 6.56 | 6.79 | 6.15 | 5.11 | 5.01 |
| | | | 73 | 7.99 | 6.83 | 6.97 | 6.34 | 5.14 | 5.05 |
| | | | 74 | 8.34 | 7.13 | 7.15 | 6.53 | 5.17 | 5.09 |
| | | | 75 | 8.71 | 7.44 | 7.33 | 6.73 | 5.19 | 5.13 |

### TABLE 3, JOINT AND SURVIVOR ANNUITY
Monthly Installment per $1,000 of annuity value, payable as long as either the Annuitant or the contingent Annuitant is living.

| Age of Male on Annuity Date | Age of Female on Annuity Date | | | | | | |
|---|---|---|---|---|---|---|---|
| | 50 | 55 | 60 | 65 | 70 | 75 | 80 |
| 50 | $ 3.35 | $ 3.50 | $ 3.64 | $ 3.75 | $ 3.84 | $ 3.91 | $ 3.95 |
| 55 | 3.44 | 3.63 | 3.83 | 4.01 | 4.16 | 4.27 | 4.35 |
| 60 | 3.51 | 3.75 | 4.01 | 4.27 | 4.51 | 4.71 | 4.85 |
| 65 | 3.56 | 3.84 | 4.16 | 4.52 | 4.88 | 5.21 | 5.47 |
| 70 | 3.59 | 3.90 | 4.28 | 4.73 | 5.22 | 5.73 | 6.19 |
| 75 | 3.62 | 3.95 | 4.37 | 4.89 | 5.51 | 6.23 | 6.95 |
| 80 | 3.63 | 3.98 | 4.42 | 4.99 | 5.73 | 6.65 | 7.68 |

### TABLE 4, JOINT AND 2/3 SURVIVOR ANNUITY
Monthly Installment per $1,000 of annuity value, payable while the Annuitant or contingent Annuitant are both living. 2/3 of the amount of payment continues for the life of the remaining Annuitant after one Annuitant dies.

| Age of Male on Annuity Date | Age of Female on Annuity Date | | | | | | |
|---|---|---|---|---|---|---|---|
| | 50 | 55 | 60 | 65 | 70 | 75 | 80 |
| 50 | $ 3.65 | $ 3.83 | $ 4.02 | $ 4.23 | $ 4.45 | $ 4.70 | $ 4.94 |
| 55 | 3.80 | 4.01 | 4.24 | 4.50 | 4.77 | 5.07 | 5.37 |
| 60 | 3.97 | 4.21 | 4.48 | 4.80 | 5.14 | 5.52 | 5.90 |
| 65 | 4.14 | 4.42 | 4.75 | 5.13 | 5.57 | 6.05 | 6.56 |
| 70 | 4.33 | 4.64 | 5.02 | 5.49 | 6.03 | 6.67 | 7.35 |
| 75 | 4.51 | 4.86 | 5.30 | 5.84 | 6.51 | 7.32 | 8.24 |
| 80 | 4.69 | 5.07 | 5.56 | 6.19 | 6.98 | 7.99 | 9.19 |

10

## TABLE OF GUARANTEED CASH VALUES

The following Table, based on an initial premium payment of $10,000, shows the guaranteed Cash Value that would accumulate prior to the time you elect to receive annuity payments. Guaranteed Cash Values are based on an interest rate of 3%.

| End of Policy Year | Value | End of Policy Year | Value |
|---|---|---|---|
| 1 | $ 9,270 | 21 | $ 16,743 |
| 2 | 9,548 | 22 | 17,245 |
| 3 | 9,835 | 23 | 17,762 |
| 4 | 10,130 | 24 | 18,295 |
| 5 | 10,433 | 25 | 18,844 |
| 6 | 10,746 | 26 | 19,409 |
| 7 | 11,069 | 27 | 19,992 |
| 8 | 11,401 | 28 | 20,591 |
| 9 | 11,743 | 29 | 21,209 |
| 10 | 12,095 | 30 | 21,845 |
| 11 | 12,458 | 31 | 22,501 |
| 12 | 12,832 | 32 | 23,176 |
| 13 | 13,217 | 33 | 23,871 |
| 14 | 13,613 | 34 | 24,587 |
| 15 | 14,022 | 35 | 25,325 |
| 16 | 14,442 | 36 | 26,085 |
| 17 | 14,876 | 37 | 26,867 |
| 18 | 15,322 | 38 | 27,673 |
| 19 | 15,782 | 39 | 28,503 |
| 20 | 16,255 | 40 | 29,358 |

**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA**
**300 South Highway 169**
**Minneapolis, MN 55426-1191**

(800) 950-5872

The Flexible Premiums paid for the policy will be accumulated to
provide an income payable at the Annuity Date. A Death Benefit is
payable before the Annuity Date.  Nonparticipating, no annual dividends.

P6500N                                                                                                   ©1998 Life**USA**

# EXHIBIT D



Probate Court Hamilton County, Ohio

In re: Estate of Roy M. Whitman                    Case No. 2017-000083

Notice of Claim of Bruce B. Whitman

Now comes Bruce Whitman, son of Roy Whitman, Dec. and hereby claims that he is entitled to the proceeds of any death benefit or annuity or other proceeds of Allianz Policy No. 6949081 and New York Life Policy # 22147484 and/or Roy Whitman Trust, PNC Bank as trustee, and any other proceeds he may be entitled.

This claim is asserted timely.

The attached claim has been served upon Esther Whitman, executor at her home address of 7137 Fair Oaks Dr., Cincinnati, Ohio 45237 and her attorney, Marc Rubin.

Bruce B. Whitman
76120 Osage Trail
Indian Wells, Ca.  92210

FILED
COURT COMMON PLEAS PROBATE
RALPH WINKLER, JUDGE
2017 APR -4 AM 8: 50

107.00

**WHITMAN CONSULTING AND MEDIATION**
**76120 OSAGE TRAIL**
**INDIAN WELLS, CA. 92210**
**(513) 703-7244**
**bbwhitmanlaw@gmail.com**

**March 20, 2017**                     **Claim of Bruce B. Whitman**
**Esther Whitman**                     **Case No. 2017-000083**
**7137 Fair Oaks Dr.**                 **March 29, 2017**
**Cincinnati, Ohio 45237**

Dear Esther:

I hope you are well and healthy. Thank you again for all of your loving care of Dad in his illness and final days.

Thank you as well for your consideration in working with Marc Rubin on a plan to ensure that each of Dad's five children receive his or her annuity as intended by Dad from Allianz. As you may be aware, I do not agree completely with Marc's interpretation of the Allianz annuities and legal issues pertaining to the New York Life policy proceeds.

As you are the executor of Dad's estate, Case No. 2017-000083, Hamilton County Probate Court, Ohio law requires that I make a claim against Dad's estate directly with you. There are time limits to such a claim. I hope you understand that my intent is not to be adversarial with you, but to preserve my rights in case the unexpected shall occur. I have advised Joy and Laura to consider making claims as well. I assume you have discussed this with Becca and Michael.

So, please be advised that I am claiming the annuity and death benefit and any such proceeds as to the Allianz Annuity No. 6949081 and New York Life Policy No. 22147484 and/or Roy M. Whitman Trust, PNC Bank Trustee, and any other proceeds to which I may be entitled.

Thanks.

Bruce B. Whitman

# EXHIBIT E



Probate Court Hamilton County, Ohio

In re: Estate of Roy M. Whitman                    Case No. 2017-000083

Notice of Claim of Laura J. Whitman

Now comes Laura J. Whitman, daughter of Roy Whitman, Dec. and hereby claims
that she is entitled to the proceeds of any death benefit or annuity or other proceeds
of Allianz Policy No. 6949081 and New York Life Policy # 22147484 and/or Roy
Whitman Trust, PNC Bank as trustee.

This claim is asserted timely.

The attached claim has been served upon Esther Whitman, executor at her home
address of 7137 Fair Oaks Dr., Cincinnati, Ohio 45237 and her attorney, Marc
Rubin.

Laura J. Whitman
310 West 72nd Street, Apt. 3A
New York, NY 10023

FILED
COURT COMMON PLEAS PROBATE
RALPH WINKLER, JUDGE

2017 APR 12  AM 10: 19

107.00

# EXHIBIT F



3551 Mira Pacific Drive

Oceanside, CA 92056

April 4, 2017

Esther Whitman

7137 Fair Oaks Drive

Cincinnati, OH 45237

RE: Claim of Joy Whitman

Case No. 2017-000083

Dear Esther,

You are the executor of Dads estate, Case No. 2017-000083.

In accordance with the advice I have received, this letter is to notify you that I am claiming the annuity, death benefit and any such proceeds that Dad designated for me with Allianz Life Insurance Company Annuity Policy # 6949092 (under the umbrella policy #6949081) and New York Life Policy # 22 147 484 and/or Roy M. Whitman Trust, PNC Bank Trustee.

A copy of this letter will be sent to your attorney, Marc Rubin.

Sincerely,

Joy Whitman

Joy Whitman

FILED
COURT COMMON PLEAS PROBATE
RALPH WINKLER, JUDGE

2017 APR 12 AM 10: 10

107.00

3551 Mira Pacific Drive

Oceanside, California 92056

April 4, 2017

Probate Court

Hamilton County, Ohio

In re: Estate of Roy M. Whitman

Notice of Claim of Joy P. Whitman

Now comes Joy P. Whitman, daughter of Roy Whitman, now deceased, and hereby claims that she is entitled to any death benefits or annuity or other proceeds of Allianz Policy No. 6949081 (subset 6949092) and New York Life Policy No.22147484 and/or Roy Whitman Trust, PNC Bank as trustee.

This claim is asserted timely.

The attached claim has been served upon Esther Whitman, executor, at her home address of 7137 Fair Oaks Drive, Cincinnati, Ohio 45237 and her attorney, Marc Rubin.


_Joy P. Whitman_

Joy P. Whitman

# EXHIBIT G

Court of Common Pleas
Hamilton County, Ohio

Bruce B. Whitman, Plaintiff, individually and on behalf
of Joy Whitman and Laura Whitman
76120 Osage Trail
Indian Wells, Ca. 92210                                 3d Amended Complaint
                                                        Case No. A17003021
            v.                                          (Judge Ethna Cooper)

Estate of Roy M. Whitman, Esther Whitman, Extrx.
Defendant
7137 Fair Oaks Dr.
Cincinnati, Ohio 45237
And

Joined Defendants:

Allianz Life Insurance Company of
North America
5701 Golden Hill Dr.
Minneapolis, Minn.  55416

D119322890

Serve:
CT Corp. System
400 Easton Commons Way Ste.126
Columbus, Ohio  43219

FILED
2017 SEP -1 P 12: 45
CLERK OF COURTS
HAMILTON COUNTY, OH
COMMON PLEAS

            and

Frederick D. Tucker
2535 Langdon Farm Rd.
Cincinnati, Ohio 45212

1. Bruce Whitman, Joy Whitman and Laura Whitman (Whitman children) are children of Roy Whitman, Decedent, Case No. 2017 000083, Hamilton County, Ohio Probate Court. This Court has concurrent jurisdiction over these claims under ORC 2101.24 (A)(1).

2. All three timely served upon executor and filed claims in the probate court that they are entitled to the proceeds of any death benefit or annuity or other proceeds of Allianz Policy No. 6949081, 9068, 9092, 9057 and/or 9070 and New York Life Policy # 22147484 and/or Roy Whitman Trust, PNC Bank as trustee.

3. The Executrix of the estate rejected the Claims. Pursuant to RC 2117.30 (A) (1) and 2117.12, claimants must commence an action on the claims within 60 days after the rejection of the claim. This action is timely.

4. These claims are based on the express intent of the Executrix to wrongfully demand proceeds from the above annuities and insurance policies and use the proceeds to pay personal debts of the Executrix, or estate debts that have not been properly and timely served as claims, or debts that are not payable by the terms of certain trust instruments and annuities.

5. Whitman children are beneficiaries of the estate, the annuitants of the Allianz policies, and beneficiaries of Fund B of the Roy Whitman Trust, PNC Bank, Trustee.

6. In the event that the Executrix does demand and receive such proceeds into the estate, the Whitman children should first receive the proceeds of the Allianz annuities and his or her respective portion of the Roy Whitman Trust, Fund B.

7. Plaintiff further prays that the Court order that the Executrix disclose all bonds and bank accounts of the Decedent as the Decedent's divorce decree from his first wife and mother of the Whitman children mandated that Decedent create and maintain bank accounts and bonds to the benefit of the Whitman children.

**8. Joined Defendant, Allianz, is a Minnesota company doing business in Ohio in 2001 and at the present, and Joined Defendant, Frederick Tucker, was an insurance agent of Allianz in 2001 who sold the subject annuities to Roy M. Whitman, M.D., and the Plaintiff/annuitants in February 2001.**

## FACTUAL BACKGROUND

9. Dr. Roy M. Whitman died on October 12, 2016. He left his spouse, Esther, and 5 children, three from his first marriage to Dorothy, Bruce, Joy and Laura, and two from his marriage to Esther, Rebecca and Michael.

10. Through hard work and industry, Roy had created some wealth in his lifetime. He created several trusts, the Roy Whitman trust, PNC trustee, to collect and distribute life insurance proceeds from New York Life, and a Whitman Family Trust, Esther Whitman, Trustee, to provide for the lifetime support of his wife, Esther, and upon her death, distribute any remaining assets to his five children.

11. Roy engaged in estate planning to best provide for his spouse and children. Many of Roy's assets were transferred outside of probate to Esther through POD accounts, beneficiary designations and lifetime transfer of the family home and other personal property.

12. For his children, Roy created several instruments: VA life insurance policies for each child (which have been distributed); certain bank accounts and bonds through the 1965 divorce decree for his three children from his first marriage (not yet distributed or disclosed); certain securities to his two children from his marriage to Esther; Allianz annuities created for each of the 5 children with a present value of about $14,800 for direct distribution to each outside of probate; and a New York Life insurance policy. The PNC Trust was created to collect the life insurance proceeds and pay specific expenses of the estate and then the remainder to be directly distributed to the five children in equal shares.

13. The Executrix of Roy's estate is Esther Whitman. The trustee of the Whitman Family Trust is also Esther Whitman. The trustee of the Roy Whitman trust is PNC Bank.

14. The Executrix has recently filed an inventory. The inventory wrongly purports that the Allianz annuities are assets of the estate.

15. The three children of Roy's first marriage have properly served claims for the proceeds of the Allianz annuities and New York Life insurance policies and any other proceeds they are entitled to. There is a dispute as to the lawful, ethical and proper distribution of those monies.

16. Plaintiff, Bruce Whitman and his siblings, contend that as annuitants they are entitled to direct distribution of the Allianz annuities or proceeds, and that the PNC Trust only provides for the payment of estate obligations/debts defined in Paragraph 4 (a) of that trust. The executrix asserts that some of her prior personal debts be paid as estate obligations by Allianz proceeds and/or New York Life proceeds. The payment of these debts, a dishonored check for @$20,000 written several years ago to Cedar Village and never made good, a credit card bill of over $13,000, and possibly other bills would defeat the interests of the Whitman children.

## FIRST CLAIM FOR RELIEF-REFORMATION

17. The Plaintiffs are equitable owners of the Allianz Annuities.

18. Allianz was negligent through its agent Fred Tucker in failing to properly prepare the annuities in the intent of the grantor/owner, who intended that the annuities be paid to the annuitants upon his death.

**19. Tucker and Allianz, which is vicariously liable for the conduct of Tucker, and directly for its conduct, in selling the Allianz annuities to Roy, negligently misrepresented that the proceeds upon Roy's death would go to each annuitant, and:**

      **a. Tucker and Allianz were acting in the course of their business;**
      **b. Supplied false information for guidance to Roy;**
      **c. Failed to exercise reasonable care in obtaining or communicating the information to the Annuitants;**
      **d. Plaintiffs and Roy justifiably relied on the information;**
      **e. Failure to pass the proceeds to Plaintiffs would result in a pecuniary loss.**

20. The Annuities are ambiguous in describing who receives the death benefit in the event the owner dies before the annuitant and before the annuitant has elected the form of payments.

21. The annuities should be reformed by the Court to fulfill the intent of the grantor/owner of the annuities to distribute the annuities to the annuitants upon his death and not to the executrix of his estate.

## SECOND CLAIM FOR RELIEF-CONSTRUCTIVE TRUST

22. A constructive trust should be imposed here as the executrix is attempting to claim legal title of the annuities in circumstance where she has admitted that the intent of the owner, the decedent, was to distribute the Allianz annuities to his 5 children upon his death.

23. The executor may not in good conscience claim the annuities from Allianz and use them to pay debts of the estate and personal debts wrongly purported to be debts of the estate.

24. The receipt of the Allianz annuities by the executrix and use to pay estate and personal debts would unjust enrich the executor of the estate.

25. This Court should order the executrix to convey ownership of the annuities to the 5 children to avoid unjust enrichment.

## THIRD CLAIM FOR RELIEF-PROMISSORY ESTOPPEL

26. Upon the death of Roy Whitman, Esther Whitman, his spouse and executrix of his estate, promised the children that she would do the "right thing" and assign the death benefit of each annuity to each annuitant/child of the decedent.

27. In furtherance of this promise, the executrix prepared and requested that each child sign an indemnification of Allianz to facilitate the distribution to each child.

28. The children in good faith reliance upon the promise each signed and returned the indemnification to the executrix.

29. The executrix has reneged on her promise to execute her paperwork and facilitate the distribution to the detriment of the children, and has made a claim and included the annuities in inventory.

30. The executrix should be estopped from her claim to the Allianz annuities and the Court should order that she fulfill her promise to assign the annuities to each child annuitant.

## FOURTH CLAIM FOR RELIEF-DECLARATORY JUDGMENT

31. Plaintiffs ask this Court to declare the rights and benefits of the Allianz annuities, **that the proceeds belong to the annuitants, that the annuitants were intended as parties to the annuities, as signatories to the annuities, and as beneficiaries upon the death of their father.**

32. The decedent and the executrix have both admitted to the children that the intent of the decedent was for Allianz or the executrix to distribute the entire proceeds to the annuitants upon his death.

**33. Therefore, this Court should declare that the proper construction of the annuities is that upon the death of the owner, the annuities, the proceeds of the annuities, and the ownership of the annuities pass to the annuitants not the estate, as that would create an unlawful and unconscionable result.**

## FIFTH CLAIM FOR RELIEF-FRAUD AND BREACH OF FIDUCIARY DUTY

**34. Esther, as the executrix of the estate and trustee of the Whitman Family Trust, has a fiduciary duty to the Plaintiffs.**

**35. She violated her fiduciary duty when she filed a claim for the proceeds of the Allianz policy in order to pay debts of the estate and personal debts, knowing that the intent of the decedent was to pass the annuities to his children, and knowing that the annuity applications were obtained by false misrepresentations by Tucker and Allianz.**

33.  By information and belief she also violated her fiduciary duty to Plaintiffs by conveying Allianz proceeds directly or indirectly to her two children and not to the Plaintiffs.

## SIXTH CLAIM FOR RELIEF-BAD FAITH BY ALLIANZ

36.  Allianz was informed by Esther as fiduciary that the intent of the decedent was to pass the annuities to each child upon his death.

37.  By information and belief, Allianz was also informed by Tucker that decedent's intent was to pass the annuities to each child upon his death. Allianz knew that Plaintiffs had never signed the applications for annuities and that Tucker had negligently misrepresented the terms of the annuities to Roy and Bruce Whitman.

38.  Bruce Whitman, and later, the other Plaintiffs, made a proper and lawful claim for the proceeds with Allianz on January 17, 2017.

39.  By information and belief, Allianz learned from Esther and Tucker that these  claims were made in good faith, that the applications were incomplete and never approved by the annuitant/children, that the policies should be reformed and that the proceeds should go to the Plaintiffs.

40.  However, Allianz instead concocted a scheme in bad faith with Esther and her counsel to present an indemnification to the Plaintiffs, knowing that Esther and her counsel would attach unreasonable conditions as to the payment of so called debts of the estate.

41.  Knowing that Esther then did not sign the indemnification, Allianz in bad faith delayed and refused to honor the claims of the Plaintiffs and threatened to interplead many months later.

42.  Plaintiffs have suffered significant injury and damage from the bad faith of Allianz, including loss of inheritance, attorney fees and costs, mental anguish, emotional distress and other general damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs demand that the Court order:

43.  Allianz annuities are not assets of the estate and the named annuitants should be entitled to direct distribution of the annuities by Allianz as reformed, but in the event the estate demands and receives the annuities funds, under the above claims for relief, distribution of the entire proceeds

should be made to each annuitant, not to pay estate obligations, expenses or personal debts of the executor.

44. That the only estate assets from the Roy Whitman Trust/New York Life Insurance Company are lawful expenses under Section 4 (a) of that trust and Item One of the Will, and that the estate may not use that money to pay dishonored checks, credit card bills or debts or expenses outside the strict language of Section 4 (b) of that Trust.

45. The executrix must account for bank accounts and bonds of the Decedent to determine the benefits to Bruce, Joy and Laura Whitman that should exist in a significant amount with compounded interest, having been created in 1964 through the divorce decree in Hamilton County, Ohio.

46. The executrix may only collect the rightful assets of the estate, and may not self-deal by using the estate assets to pay personal obligations. The Will itself in Item One states that the Executrix may only pay the "legal obligations" of the estate.

47. That Executrix not demand proceeds of non-probate assets into the estate, but in the event that the Executrix does demand and receive such proceeds into the estate, that under theories of reformation and constructive trust and

unjust enrichment, the Whitman children receive the proceeds of Allianz annuities and their respective portion of the Roy Whitman Trust, Fund B.

48. That the Court order the executrix to perform as promised in assigning and distributing the entire proceeds of the Allianz annuities to each annuitant of each policy.

49. That the Court order disgorgement of any unjust enrichment or ill gotten gain by the executrix.

50. That the Court declare that the Allianz policies are ambiguous and that the intent of the decedent therefore controls and the executrix must distribute all Allianz proceeds to each child/annuitant.

51. An examination of the executrix under oath in open court on the matters stated in the above paragraphs pursuant to ORC 2113.26.

52. All costs, fees, and damages for unjust enrichment, breach of promise, emotional distress and mental anguish, to which the claimants are entitled be reimbursed by the estate or executrix and exemplary damages if Defendants are found to have knowingly misrepresented, breached any promise, fiduciary duty, misconduct, fraud or self -dealing, or acted with bad faith and/or intentional indifference to the legal rights of Plaintiffs.

s/Bruce B. Whitman (0003662)
76120 Osage Trail
Indian Wells, Ca. 92210
(513) 703-7244

Co-Counsel

John L. Heilbrun (0010192)
9403 Kenwood Rd. Ste. B-110
Cincinnati, Ohio 45242
(513) 321-3940

## CERTIFICATE OF SERVICE

I have served a copy of the above action upon Attorney Marc Rubin, Cohen Todd
Kite and Stanford, LLC, Suite 2350 250 E. 5th St., Cincinnati, Ohio, 45202 this
22nd day of August, 2017.

s/Bruce B. Whitman

# EXHIBIT H

Date Produced: 09/11/2017

HAMILTON COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 7194 5168 6310 0835 9040. Our records indicate that this item was delivered on 09/07/2017 at 11:10 a.m. in COLUMBUS, OH 43219. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :



Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number: 13428463SEQ1

# EXHIBIT I

PerfectForm F4.48

# PROBATE COURT OF HAMILTON COUNTY, OHIO
## RALPH WINKLER, JUDGE

ESTATE OF <u>ROY WHITMAN</u>                                                    , DECEASED

CASE NO. <u>2017 000083</u>

** AMENDED **

# SURVIVING SPOUSE, CHILDREN, NEXT OF KIN, LEGATEES AND DEVISEES
### [R.C. 2105.06, 2106.13 and 2107.19]

[Use with those applications or filings requiring some or all of the information in this form, for notice or other purposes. Update as required.]

The following are decedent's known surviving spouse, children, and the lineal descendants of deceased children. If none, the following are decedent's next of kin who are or would be entitled to inherit under the statutes of descent and distribution.

| Name | Residence Address | Relationship to Decedent | Birthdate of Minor |
|---|---|---|---|
| ESTHER WHITMAN | 7137 FAIR OAKS DRIVE CINCINNATI, OH  45237 | Surviving Spouse | |
| JOY WHITMAN | 7583 COUNTRY LANE APT. 1 CHAGRIN FALLS, OHIO  44023 | DAUGHTER | |
| LAURA WHITMAN | 310 WEST 72ND ST. APT 3A NEW YORK, NY  10023 | DAUGHTER | |
| BRUCE WHITMAN | 76120 OSAGE TRAIL INDIAN WELLS, CA  92210 | SON | |
| MICHAEL WHITMAN | 212 S. LASKY DR. #7 BEVERLY HILLS, CA  90212 | SON | |
| REBECCA WHITMAN | 12724 CASWELL AVE. #5 LOS ANGELES, CA  90066 | DAUGHTER | |

[Check whichever of the following is applicable]

☐ The surviving spouse is the natural or adoptive parent of all of the decedent's children.

☒ The surviving spouse is the natural or adoptive parent of at least one, but not all, of the decedent's children.

☐ The surviving spouse is not the natural or adoptive parent of any of the decedent's children.

☐ There are minor children of the decedent who are not the children of the surviving spouse.

☐ There are minor children of the decedent and no surviving spouse.

FILED
COURT COMMON PLEAS PROBATE
RALPH WINKLER, JUDGE
2017 JUL 10  PM 12: 44

FORM 1.0 - SURVIVING SPOUSE, CHILDREN, NEXT OF KIN, LEGATEES AND DEVISEES                    12/01/2002

PerfectForm F4 48

**CASE NO.** 2017 000083

The following are the vested beneficiaries named in the decedent's will:

| Name | Residence Address | Birthdate of Minor |
|------|-------------------|--------------------|
| ESTHER WHITMAN | 7137 FAIR OAKS DRIVE CINCINNATI, OH 45237 | |
| ESTHER WHITMAN, TRUSTEE Roy Whitman Family Trust 12202007 | 7137 FAIR OAKS DRIVE CINCINNATI, OH 45237 | |

**[Check whichever of the following is applicable]**

☐ The will contains a charitable trust or a bequest or devise to a charitable trust, subject to R.C. 109.23 to 109.41.

☒ The will is not subject to R.C. 109.23 to 109.41 relating to charitable trusts.

7-1-2017
Date

*Esther Whitman*
Applicant (or give other title)