# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| BRUCE B. WHITMAN, et al., | : | Case No. 1:17-cv-667 |
| Plaintiffs, | : | Judge Thomas M. Rose |
| v. | : | |
| ESTATE OF ROY W. WHITMAN, ESTHER WHITMAN, EXTRX., et al., | : | |
| Defendants. | : | |

**ENTRY AND ORDER GRANTING DEFENDANT FREDERICK D. TUCKER'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 13), GRANTING DEFENDANT ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 22), DENYING PLAINTIFF BRUCE B. WHITMAN'S MOTION TO CONVERT DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS TO SUMMARY JUDGMENT MOTIONS (DOC. 38), DENYING MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT (DOC. 36), AND DENYING MOTION TO STAY DISCOVERY (DOC. 23)**

This statutory interpleader case is before the Court on the Motions for Judgment on the Pleadings (Docs. 13, 22) filed by Defendant Frederick D. Tucker ("Tucker") and Defendant Allianz Life Insurance Company of North America ("Allianz"), respectively. Also pending are Plaintiffs' Motion for Leave to File a Fourth Amended Complaint (Doc. 36) and Motion to Convert the Motions for Judgment on the Pleadings into Motions for Summary Judgment (Doc. 38). In addition, Tucker has moved to stay discovery pending the Court's ruling on these Motions. (Doc. 23.)

For the reasons below, the Court **GRANTS** both Tucker's and Allianz's Motions for Judgment on the Pleadings (Docs. 13, 22).  The Court **DENIES** Plaintiff's Motion for Leave to File a Fourth Amended Complaint (Doc. 36) as futile and **DENIES** Plaintiff's Motion to Convert the Motions for Judgment on the Pleadings into Motions for Summary Judgment (Doc. 38) because additional facts are not necessary to rule on Plaintiff's claims against Tucker and Allianz.  The Court **DENIES** Tucker's Motion to Stay Discovery (Doc. 23) as moot.

I. <u>BACKGROUND</u>

This action concerns three Allianz annuity policies, which Roy Whitman ("Roy"), now deceased, purchased in 2001.  Roy was survived by his wife, Esther Whitman ("Esther"), who serves as Executor of his Estate; and by his three children from a previous marriage: Plaintiffs Bruce B. Whitman ("Bruce"), Laura Whitman ("Laura"), and Joy P. Whitman Rush ("Joy").  Each annuity names one of his children as the annuitant: Policy Number 6949092 naming Joy; Policy Number 6949070 naming Laura; and Policy Number 6949081 naming Bruce (collectively, the "Allianz Annuities").  Each policy also states, however, that if Roy dies before the annuitant, his rights "will pass to the executor of [his] estate unless ownership has been otherwise assigned."  (Doc. 2-1.)

In April 2017, Bruce, Laura, and Joy each made a claim for their respective annuity.  (Doc. 7 at ¶ 2.)  Esther rejected all three claims and Bruce thereafter commenced a civil case in the Court of Common Pleas of Hamilton County, Ohio (the "State Court Case").  (*Id.* at ¶ 3.)  Allianz removed the case to this Court as a statutory

interpleader action under 28 U.S.C. § 1335. (Doc. 1.) On December 27, 2017, the Court granted Allianz's motion to join Laura and Joy as indispensable parties. (Docs. 3, 24.)

Allianz's interpleader claim asks this Court to decide whether the Allianz Annuities should be distributed to Esther, as Executrix, or to Bruce, Joy, and Laura. Plaintiffs allege that they are entitled to direct distribution of the Allianz annuities or proceeds as the named annuitants. (Doc. 7 at ¶ 16.) Esther asserts that other obligations take precedence over Plaintiffs' claims. (*Id.*)

Plaintiffs allege that, upon his death, Roy intended for the annuities to be paid to Bruce, Laura, and Joy. Plaintiffs further allege that Allianz was negligent through its agent, Tucker, in failing to prepare the annuities according to Roy's intent. (*Id.* at ¶ 18.) Plaintiffs assert a claim for negligent misrepresentation against both Allianz and Tucker and a claim for bad faith against Allianz only for its handling of Plaintiffs' claims to the annuities.

## II. DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

Allianz and Tucker move to dismiss Plaintiffs' claim for negligent misrepresentation as time barred and for failure to state a claim upon which relief can be granted. (Doc. 22 at 1; Doc. 13 at 1.) Allianz also moves to dismiss Plaintiffs' bad faith claim for failure to state a claim upon which relief can be granted. (Doc. 22 at 1.)

### A. Legal Standard

A Rule 12(c) motion for judgment on the pleadings attacks the sufficiency of the pleadings and is subject to the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Ziegler v. IBP Hog Mkt.*, 249 F.3d 509, 511-12 (6th Cir. 2001). A "motion to

3

dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). A Rule 12(c) motion should be granted if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *Cmty. Mental Health Serv. v. Mental Health & Recovery Bd.*, 395 F. Supp. 2d 644, 649 (S.D. Ohio 2004).

### B. Plaintiffs' Claim for Negligent Misrepresentation

As mentioned, Allianz and Tucker move to dismiss the negligent misrepresentation claim on two grounds: first, as time barred under the statute of limitations and, second, for failure to state a claim. The Court does not reach the second ground for dismissal because, as discussed below, the claim is barred by the statute of limitations.

The parties agree that the Supreme Court of Ohio's recent decision in *LGR Realty, Inc. v. Frank & London Ins. Agency*, 2018-Ohio-334, is directly relevant to whether the statute of limitations bars Plaintiffs' claim here. Plaintiffs argue that *LGR Realty* is "resoundingly favorable" to them, however, while Allianz and Tucker argue that *LGR Realty* confirms that Plaintiffs' claim is time-barred. (Doc. 33 at 2; Doc. 34 at 1; Doc. 35 at 1.) They both cannot be right.

Under Ohio law, a four-year statute of limitations applies to professional negligence claims, like Plaintiffs' claim for negligent misrepresentation in this case. *See* Ohio Rev. Code 2305.09; *Investors REIT One v. Jacobs*, 46 Ohio St. 3d 176, 546 N.E.2d 206

4

(1989); *Allen v. Andersen Windows, Inc.*, 913 F.Supp.2d 490 (S.D. Ohio 2012). The Supreme Court of Ohio has long recognized that a "[s]tatute of limitations commences to run so soon as the injurious act complained of is perpetrated, although the actual injury is subsequent * * *." *LGR Realty*, 2018-Ohio-334 at ¶ 14 (quoting *Kerns v. Schoonmaker*, 4 Ohio 331 (1831)). Yet, as the Supreme Court of Ohio has also observed, there are two primary exceptions to this rule:

> One exception to the general rule is the discovery rule, which provides that "[w]hen an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or by the exercise of reasonable diligence should have known, that he had been injured by the conduct of the defendant, for purposes of the statute of limitations." *O'Stricker* [*v. Jim Walter Corp.*, 4 Ohio St.3d 84, 87, 447 N.E.2d 727 (1983)] at paragraph two of the syllabus.
>
> The second exception to the general rule is the delayed-damage rule, which this court first adopted in *Velotta v. Leo Petronzio Landscaping*, Inc., 69 Ohio St.2d 376, 433 N.E.2d 147 (1982). Under the delayed-damage rule, "where the wrongful conduct complained of is not presently harmful, the cause of action does not accrue until actual damage occurs." *Id*. at 379, 433 N.E.2d 147.

*LGR Realty*, 2018-Ohio-334 at ¶¶ 15-16.

In *LGR Realty*, the question before the Supreme Court of Ohio was whether the delayed-damage rule was applicable to "a cause of action alleging negligence related to the procuring of a professional-liability insurance policy." The appellant, an insurance agency, had procured a professional-liability insurance policy on behalf of the appellee, a realty company. A liability claim was made against the realty company, which then made a claim against the professional-liability insurance policy for defense and indemnification. The insurance carrier denied the claim, however, based on an

5

exclusion provision in the policy. As a result of the denial of coverage, the realty company incurred significant expenses defending against the liability claim.

The realty company then brought an action against the insurance agency alleging that it had negligently procured the professional-liability policy and negligently misrepresented the coverage that it provided. The realty company claimed that the insurance agency breached its duty to procure an appropriate insurance policy and was therefore liable for the realty company's defense costs. The insurance agency moved to dismiss on the grounds that the claim was barred by the statute of limitations under *Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*, 128 Ohio St. 3d 529, 2011-Ohio-1961, 947 N.E.2d 672. It argued that, under *Flagstar*, the realty company's claim accrued on the date when the policy went into effect and was subject to the four-year statute of limitations set forth in Ohio Revised Code 2305.09. Since the realty company brought its action more than four years after the policy went into effect, the insurance agency argued the professional negligence claim was time barred.

The realty company, relying primarily on *Kunz v. Buckeye Union Ins. Co.*, 1 Ohio St.3d 79, 437 N.E.2d 1194 (1982), argued that the statute of limitations did not begin to run until it suffered an "injury" under the delayed-damages rule. It claimed not to have suffered any injury until, at the earliest, when the insurance carrier denied its claim for defense and indemnity. Since that denial occurred within four years of when it brought suit, its claim was not barred by the statute of limitations.

The trial court found that the delayed-damages rule set forth in *Kunz* had been "eroded" by subsequent cases, including *Flagstar*, and dismissed the realty company's

6

claim as barred by the statute of limitations. The court of appeals reversed, holding that *Flagstar* should be read more narrowly, and not to overrule *Kunz*.

The Supreme Court of Ohio declined to decide whether *Kunz* had been overruled by *Flagstar* and other precedent. Instead, it distinguished *Kunz* on its facts and held that the realty company's claim was barred by the four-year statute of limitations. In reaching that conclusion, the Supreme Court of Ohio first observed that the "pronouncement of law" in *Kunz*, as a per curiam opinion, "must be read in light of the facts of the case." *Id.* at ¶ 25.

The facts and holding in *Kunz*, as summarized by the Supreme Court of Ohio in *LGR Realty*, were as follows:

> In *Kunz*, a per curiam opinion without a syllabus, the insureds, Walter Kunz and his concrete company, began purchasing business insurance from their insurance agent in 1952. [*Kunz v. Buckeye Union Ins. Co.*], 1 Ohio St.3d 79, 437 N.E.2d 1194. In 1969, the insureds purchased an insurance policy written by Buckeye Union Insurance Company ("Buckeye Union") that provided "all risk" coverage on a crane. Later that year, Kunz and his insurance agent discussed consolidating the various individual policies on the insureds' equipment into a single omnibus policy.
>
> In April 1970, the insurance agent presented Kunz with a three-year consolidated policy from Buckeye Union that Kunz believed provided the same "all risk" coverage that the insureds formerly had. In 1973, the insureds renewed the consolidated policy, again assuming that the coverage was as good as the pre-1970 individualized policies.
>
> On April 21, 1975, the crane owned by the insureds was damaged. Initially, Buckeye Union informed Kunz that the loss would be covered. But in June 1975, Buckeye Union denied the claim, citing exclusions in the consolidated policy that had not been part of the pre-1970 insurance contract on the crane.
>
> On April 20, 1977, the insureds filed a complaint alleging that their insurance agent had negligently failed to obtain the requested coverage for the crane and/or failed to disclose a change in the coverage of the

7

crane. Holding that the four-year statute of limitations in R.C. 2305.09 applied and that it began to run no later than April 1, 1973—the date the consolidated insurance policy was renewed—the trial court granted summary judgment in favor of the insurance agent. The court of appeals affirmed the trial court's judgment.

On appeal to this court, the insureds argued in support of applying the delayed-damage rule. In determining that the delayed-damage rule applied, this court relied on the reasoning set forth in *Austin v. Fulton Ins. Co.*, 444 P.2d 536 (Alaska 1968). In that case, the Alaska Supreme Court held that a cause of action for negligent failure to procure insurance coverage for damage caused by an earthquake accrued not when the defective policy was issued but years later, when an earthquake caused property damage. Therefore, even though the insureds' policy in Kunz was purchased in 1970 and renewed in 1973, the court held that their cause of action did not accrue until their crane was damaged in 1975. Consequently, the insureds' complaint filed in April 1977 was timely filed.

*Id*. at ¶ 19-23.

Three justices, writing for the majority, did not overrule *Kunz*, but found that the differences between the facts in *Kunz* and *LGR Realty* were significant enough that *Kunz* was not controlling. Those differences were that, in *LGR Realty*, when the realty company purchased the professional-liability insurance policy, the exclusion upon which the carrier based its denial of coverage was contained in the policy. *Id*. at ¶ 24. In contrast, "[i]n *Kunz*, the insureds purchased a property insurance policy providing 'all risk' coverage on a crane. When that individual policy was consolidated into the omnibus policy, the insureds believed, incorrectly, that the 'all risk' coverage continued." *Id*. The majority also declined to extend the delayed-damages rule, notwithstanding that *Kunz* did not control, because the facts did not fit within the "narrow circumstances in which application of the general rule 'would lead to the unconscionable result that the injured party's right to recovery can be barred by the

statute of limitations before he is even aware of its existence.'"  *Id.* at ¶ 26 (quoting *Wyler v. Tripi*, (1971), 25 Ohio St.2d 164, 168, 267 N.E.2d 419).

In a sharp concurrence, two justices wrote separately "to make explicit what is implicit in the majority's decision today: a cause of action for professional malpractice under R.C. 2305.09(D) will always accrue at the time of the negligent act."  *Id.* at ¶ 32.  The concurring justices took the majority to task for declining to recognize what, in their view, had already been established by the court's prior decisions in *Flagstar*; *Grant Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 566 N.E.2d 1220 (1991); and *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 546 N.E.2d 206 (1989).  The concurrence argued that *Kunz* was effectively overruled and warned that failure to say so directly would cause confusion among lower courts.  *Id.* at ¶ 40.  The concurrence was not persuaded that the majority had distinguished *Kunz* on its facts—which permitted the court to defer ruling on its continuing validity.  The concurrence observed that "[i]n both cases, an insured received less coverage than it thought it had purchased, an injury occurred, coverage was denied, and a lawsuit was filed more than four years after the policy had issued."  *Id.* at ¶ 43.

This Court, faced with the same question regarding *Kunz*'s precedential authority as the Supreme Court of Ohio faced in *LGR Realty*, must admit that the concurrence's criticism has some merit.  In both *Kunz* and *LGR Realty*, the insureds thought that they had purchased a product that contained certain coverage, but discovered that they did not have that coverage when they pursued a claim.  In *Kunz*, the insureds were permitted to bring suit because the court held the statute of

9

limitations ran from the date that they realized their mistake. In *LGR Realty*, the insureds were not permitted to bring suit because the statute of limitations was held to run from the date the policy was issued. The Court recognizes that the concurrence's opinion does not constitute the Supreme Court of Ohio's opinion for precedential purposes. Nonetheless, it does provide an insightful lens through which to construe the majority's opinion.

Plaintiffs do not argue that this case is analogous to *Kunz*, whose holding must be narrowly restricted to its facts. Rather, they argue that this case falls within the "narrow circumstances" where the delayed-damages rule should be applied to avoid the "unconscionable result that the injured party's right to recovery can be barred by the statute of limitations before he is even aware of its existence." (Doc. 33 at 3; *LGR Realty*, 2018-Ohio-334, at ¶ 26 (internal quotes omitted).) Plaintiffs argue that they were not aware of their right to recovery—due to the annuities' alleged defects—until their father passed, and therefore the statute of limitations should run from that date. Plaintiffs' interpretation of this exception, however, is not consistent with the Supreme Court of Ohio's analysis in *LGR Realty*.

In *LGR Realty*, the realty company alleged that it purchased an inadequate insurance policy based on the professional negligence, including negligent misrepresentations, of the insurance agency. The realty company only became aware of the limitations of the policy after it was forced to defend itself against a claim. These allegations, however, did not trigger the application of the delayed-damages rule. The Supreme Court of Ohio focused on the exclusion provision that resulted in the denial of

10

coverage. Since that provision was in the insurance policy when it was issued, the realty company "was damaged the moment it entered into the contract and became obligated to pay a premium for a professional-liability insurance policy that was less than the coverage that it believed it would receive." *LGR Realty*, 2018-Ohio-334, at ¶ 28. The harm was therefore "complete" at that time and the statute of limitations began to run upon the issuance of the policy.

Following the same logic in this case, the Court must conclude that Plaintiffs' professional negligence claim against Allianz and Tucker is barred by the statute of limitations. Plaintiffs allege that they were damaged because their father was issued annuities that did not clearly reflect his intentions, specifically regarding to whom the annuities would pass upon his death. The annuities' defects were present upon their issuance. Roy and his intended annuitants were therefore injured on the day that he purchased the annuities which did not reflect his alleged wishes and, therefore, did not receive what he paid for. Following *LGR Realty*, Plaintiffs' damages were "complete" at that time.

As Plaintiffs brought their professional negligence claims more than four years after the issuance of the annuities, those claims are barred by the four-year statute of limitations set forth in Ohio Revised Code 2305.09.

### C. **Plaintiffs' Claim for Bad Faith**

Allianz moves to dismiss Plaintiffs' claim for bad faith for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Allianz argues that Plaintiffs cannot state a claim for bad faith because it applies to an insurer's denial of a claim for insurance coverage, not an

annuitant's claim to the proceeds of an annuity. Allianz also argues that it cannot be held liable for doing "exactly what it is authorized by law to do where it is faced with competing claimants." (Doc. 22 at 4, citing *Trego v. Allstate Ins. Co.*, 552 F. App'x 449, 451 (6th Cir. 2014).) Allianz then argues that, in any event, Plaintiffs do not have the privity with Allianz necessary to maintain a claim for bad faith because the contractual relationship at issue was between Allianz and Plaintiffs' father, Roy. (*Id.* at 5, citing *William Powell Co. v. Nat'l Indem. Co.*, 141 F. Supp. 3d 773, 782 (S.D. Ohio 2015) ("[A] bad faith claim arises out of the contractual relationship between the insurer and the insured and [Ohio courts] have consistently rejected bad faith claims where the parties are not in privity with each other.") (citing *Gillette v. Estate of Gillette*, 837 N.E.2d 1283, 1286-87 (Ohio Ct. App. 2005) (collecting cases)).)

"Under Ohio law, an insurer fails to exercise good faith in the denial of a claim only where the denial is not 'reasonably justified.'" *Trego*, 552 F. App'x at 451 (citing *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 399 (Ohio 1994)). Plaintiffs have not cited any caselaw showing that this cause of action should be extended to the manner in which an insurer or other financial institution processes an annuity upon its owner's death. An annuity is a contract that provides for the payment of a sum of money yearly or at other regular intervals; it is not an insurance contract. *See Merriam-Webster's Collegiate Dictionary* 47 (10th ed. 2002). In Ohio, the cause of action for bad faith arises from a "legal duty of good faith," as opposed to a contractual duty, that courts implied due to the unique relationship between an insurer and insured. *See Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117–18 (6th Cir. 1976). At least one Ohio appellate court has

indicated that "Ohio law only recognizes an implied covenant of good faith and fair dealing in insurance contracts and in limited circumstances where the duty arises from the language of the contract." *Pappas v. Ippolito*, 2008-Ohio-3976, ¶ 57, 177 Ohio App. 3d 625, 642, 895 N.E.2d 610, 622. Plaintiffs have not shown that the seller of an annuity and its purchaser have a relationship that gives rise to a cause of action for bad faith under Ohio law.

Plaintiffs cite to Ohio statutes regarding life benefits and identity theft in support of their bad faith claim. One statute provides that it is a misdemeanor to fail to obtain the consent of the person for whom an annuity provides a life benefit. (Doc. 26 at 10, citing Ohio Rev. Code §§ 3999.03, 3999.99.) Plaintiffs cite other statutes for the proposition that using an individual's personal information without their consent is punishable as identity theft. (Doc. 26 at 10, citing Ohio Rev. Code §§ 2307.60, 2913.02, 2913.60(D)[1].) These statutes do not address whether Plaintiffs' bad faith claim may proceed in this case. Whether the statutes give rise to another private right of action is not a question before the Court.

A second reason that Allianz is entitled to dismissal of the bad faith claim is that Plaintiffs lack the required privity. As this Court has recognized, Ohio courts "have specifically noted that a bad faith claim arises out of the contractual relationship between the insurer and the insured and have consistently rejected bad faith claims where the parties are not in privity with each other." *The William Powell Co. v. Nat'l*

---

[1] As there is no Ohio Rev. Code § 2913.60(D), Plaintiffs likely intended to cite § 2913.49(D) relating to identity fraud.

13

*Indem. Co.*, 141 F. Supp. 3d 773, 782 (S.D. Ohio 2015) (Dlott, J.), citing *Gillette v. Estate of Gillette*, 163 Ohio App.3d 426, 837 N.E.2d 1283, 1286–87 (2005) (collecting cases); *Eastham v. Nationwide Mut. Ins. Co.*, 66 Ohio App.3d 843, 586 N.E.2d 1131, 1133 (1990) ("[W]e believe that liability for bad faith must be *strictly tied* to the implied-in-law covenant of good faith and fair dealing arising out of the underlying contractual relationship.") (emphasis added). Even if they could establish the existence of a bad faith claim in the context of this case, Plaintiffs do not allege that they were in contractual privity with Allianz.

Finally, Plaintiffs' bad faith claim also fails because, even accepting their allegations as true, they could not establish that Allianz had no reasonable justification for bringing an interpleader action instead of paying the proceeds of the annuities to Plaintiffs. Plaintiffs allege that it was clear to Allianz, by January 2017, that Roy's intention was to pass the annuities to Plaintiffs upon his death. (Doc. 26 at 8, citing *Adams v. Adams*, 2003-Ohio-3703 (12th Dist. App.).) It is undisputed, however, that Esther claimed that she was also entitled to the annuities. (Doc. 1-1 at ¶ 14.) Plaintiffs themselves allege that "[t]he Annuities are ambiguous in describing who receives the death benefit in the event the owner dies before the annuitant and before the annuitant has elected the form of payments." (*Id*. at ¶ 20.) The pleadings therefore evince a genuine dispute regarding ownership of the annuities and their proceeds, which alone establishes reasonable justification for Allianz's decision not to pay out the annuities' proceeds and bring an interpleader action.

For all these reasons, Plaintiffs' claim for bad faith is dismissed.

## III. PLAINTIFFS' MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT (DOC. 36)

Plaintiffs move to file a Fourth Amended Complaint revising paragraph 15 of the Third Amended Complaint to clarify that "Plaintiffs were unaware of the existence of the nature of or the terms of the Allianz annuities until after his death on October 12, 2016. (Doc. 36 at 1.) Plaintiffs seek to make this change to support their argument that their negligent misrepresentation claim falls within the "narrow exception" set forth in *LGR Realty* for application of the delayed-damages rule. In construing the Third Amended Complaint, the Court has assumed that Plaintiffs were unaware of the terms of the annuities until Roy's death. Assuming the truth of this allegation, however, Plaintiffs' negligent misrepresentation claim is still barred by the statute of limitations for the reasons discussed above. Plaintiffs' Motion for Leave to File a Fourth Amended Complaint (doc. 36) is therefore denied as futile.

## IV. PLAINTIFFS' MOTION TO CONVERT THE MOTIONS FOR JUDGMENT ON THE PLEADINGS INTO MOTIONS FOR SUMMARY JUDGMENT (DOC. 38)

Discovery cannot not save Plaintiffs' claims against Allianz and Tucker from dismissal. The Court therefore denies Plaintiffs' Motion to Convert the Motions for Judgment on the Pleadings into Motions for Summary Judgment (Doc. 38)

## V. TUCKER'S MOTION TO STAY DISCOVERY (DOC. 23)

Tucker moves to stay discovery pending the resolution of his Motion for Judgment on the Pleadings. As the Court has dismissed the claims against both Tucker and Allianz, this motion is denied as moot.

## VI. CONCLUSION

For the reasons above, the Court rules as follows:

1. Tucker's Motion for Judgment on the Pleadings (Doc. 13) is **GRANTED**;

2. Allianz's Motion for Judgment on the Pleadings (Doc. 22) is **GRANTED**;

3. Plaintiffs' Motion for Leave to File a Fourth Amended Complaint (Doc. 36) is **DENIED**;

4. Plaintiffs' Motion to Convert the Motions for Judgment on the Pleadings into Motions for Summary Judgment (Doc. 38) is **DENIED**; and

5. Tucker's Motion to Stay Discovery (Doc. 23) is **DENIED**.

Still pending in this case are the Joint Motion to Release Interpleaded Funds (Doc. 46) filed by Plaintiffs and Esther and Motion for Award of Attorneys' Fees and Expenses (Doc. 47) filed by Allianz. The Court will rule on these motions after they are fully briefed by the parties.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, May 3, 2018.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE